R.C. BOGGS, Individually and on behalf of Carolyn Boggs, Deceased, Appellant (Plaintiff Below),

v.

TRI–STATE RADIOLOGY, INC., Appellee (Defendant Below).

No. 82S04–0002–CV–115.

Supreme Court of Indiana.

June 28, 2000.

Mary Beth Ramey, Indianapolis, Indiana, Attorney for Appellant.

Douglas V. Jessen, Evansville, Indiana, Karl Mulvaney, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We hold that the Indiana Constitution is not violated by application of the Medical Malpractice Act's two-year limitations period to bar a claim that was discovered several months before the limitations period expired and well within two years of its occurrence.

### Factual and Procedural Background

In July 1991 Carolyn Boggs went to Doctor Robert H. Oswald after detecting a mass in her left breast. A mammogram was taken and Carolyn was instructed to return after one year. On July 28, 1992, a second mammogram was taken, and, based on a comparison with the first, an excisional biopsy was recommended. Both mammograms were taken by Oswald's office and interpreted by physicians at Tri–State Radiology. The biopsy took place on August 12, 1992, and revealed that the mass in Carolyn's left breast was malignant. Subsequently it was discovered that the cancer had metastasized to her liver and that her breast cancer was in Stage IV. Carolyn died on July 28, 1993. On July 1, 1994, Carolyn's husband, R.C. Boggs, filed a proposed medical malpractice complaint pursuant to the Medical Malpractice Act against Oswald and Tri–State.[1] He alleged that "[a]s a direct and proximate result of the carelessness and negligence of [Tri–State], ... [Carolyn's] malignancy metastasized and by the time it was discovered, it was incurable."

Tri–State filed a motion for preliminary determination of its statute of limitations defense. This is a procedure unique to Medical Malpractice Act claims that permits the trial court to assume jurisdiction over threshold issues before the Medical Review Panel has acted. See Ind.Code § 34–18–11–1 (1998). Tri–State designat-

1. See Ind.Code § 27–12–8–4 (1993) (recodi-    fied at § 34–18–8–4 (1998)).

ed Boggs' complaint and the affidavit of the Tri–State doctor, which established the dates of Carolyn's treatment. Boggs designated only his complaint, but contended that there were material issues of fact as to which discovery was needed and that the Medical Malpractice Act's two-year limitations period was unconstitutional. The trial court properly treated this motion as governed by the summary judgment standard of Trial Rule 56. Finding no issue of material fact, the trial court entered judgment in Tri–State's favor on May 21, 1998. The Court of Appeals reversed, holding the medical malpractice statute of limitations unconstitutional as applied to Boggs. *See Boggs v. Tri–State Radiology, Inc.*, 716 N.E.2d 45, 51 (Ind.Ct. App.1999).

This appeal raises the following issues: (1) Was the Court of Appeals correct in concluding that the statute of limitations was unconstitutional as applied to Boggs? (2) If not, does either fraudulent concealment or continuing wrong operate to toll the statute of limitations?

### Standard of Review

The entry of summary judgment on a motion for a preliminary determination is subject to the same standard of appellate review as any other entry of summary judgment. *See, e.g., Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind.1991). The standard of appellate review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Shell Oil*, 705 N.E.2d at 983–84. When the moving party asserts the statute of limitations as an affirmative defense, however, and establishes that the action was commenced beyond the statutory period, the burden

shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Conard v. Waugh*, 474 N.E.2d 130, 134–35 (Ind.Ct.App.1985). Here, Boggs seeks to avoid the defense by arguing that the statute of limitations is unconstitutional as applied to him and also by asserting that material factual disputes remain that bear on the doctrines of fraudulent concealment and continuing wrong.

### I. Statute of Limitations

In *Martin v. Richey*, 711 N.E.2d 1273, 1284–85 (Ind.1999), and *Van Dusen v. Stotts*, 712 N.E.2d 491, 493 (Ind.1999), this Court held that the medical malpractice statute of limitations was unconstitutional as applied to the plaintiffs because they were barred from pursuing an otherwise valid medical malpractice claim before they had reason to know of that claim. We concluded that barring their claims violated Article I, Section 12, the Open Courts Clause, and Article I, Section 23, the Equal Privileges and Immunities Clause of the Indiana Constitution. We held that under both constitutional provisions the statute of limitations was unconstitutional where a plaintiff, in the exercise of reasonable diligence, could not have discovered the injury before the expiration of the limitations period. *See Martin*, 711 N.E.2d at 1282, 1284–85; *Van Dusen*, 712 N.E.2d at 493. In *Van Dusen*, we held that under those circumstances plaintiffs would be allotted the full two-year statutory period to file a claim, running from the time "they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." 712 N.E.2d at 493.

Here, however, Carolyn became aware of her injury eleven months before the statute of limitations expired. Thus, she or Boggs could have filed a claim within the two-year limitations period prescribed by the Medical Malpractice Act, but did not. By its terms, the two-year statute

bars Boggs' claim. He thus presents the issue whether the statute of limitations is unconstitutional as applied to plaintiffs who cannot reasonably be expected to learn of their injuries at the time of the alleged occurrence of malpractice, but do, or should, become aware of their injuries well before the end of the limitations period.

### A. *Article I, Section 12*

■ The Court of Appeals held that the statute of limitations as applied to Boggs did not violate Article I, Section 12 because he was not denied a meaningful opportunity to pursue his malpractice claim. Boggs argued that the limitations period often operates as a practical bar by forcing medical malpractice victims who suffer from terminal conditions to commence litigation and simultaneously battle for their lives. There is no doubt some force to Boggs' point. But it is equally plain that nothing prevented him or Carolyn from initiating litigation within the statutory period or attempting to secure a waiver of the limitations period. The legislature has chosen the benefits of certainty over the burdens that may be imposed on still suffering families by a requirement that litigation be filed promptly. This scheme raises no inherent bar to a remedy and leaves our courts open to entertain the claim. Accordingly, it is a constitutional exercise of the balancing of interests that legislatures are called upon to do. The Court of Appeals correctly concluded that Article I, Section 12 is not violated by the application of the statute of limitations to bar Boggs' claim.

### B. *Article I, Section 23*

Although the Court of Appeals found no Article I, Section 12 violation, it concluded that barring Boggs from proceeding with his claim did violate Article I, Section 23 because it granted to some a privilege denied to others similarly situated and therefore created a classification that failed the second prong of *Collins v. Day,*

644 N.E.2d 72, 80 (Ind.1994). *See Boggs,* 716 N.E.2d at 50. The Court of Appeals pointed out that some plaintiffs, like Boggs, have less than the full two-year statutory period to file their claims, but others have the full two years. As the Court of Appeals noted, under *Martin* et al., the plaintiff who discovers his or her claim the day after the statutory period expires may pursue the claim, but the statute would purport to bar the plaintiff who discovers the malpractice the day before the statutory period expires. *See id.* The Court of Appeals reasoned that these two plaintiffs are for all practical purposes identically situated, and yet one has hours, minutes, or seconds within which to file a claim, and the other has two years. This was found to be an impermissible classification. Further, the court reasoned, Boggs is situated similarly to the plaintiffs in *Martin* and *Van Dusen,* in that they were also unable to discover the malpractice on the day it occurred, and both were allowed two years from discovery to file their claims.

■ We do not agree that the statute of limitations as applied to Boggs violates Article I, Section 23. In *Collins,* this Court enunciated a two-part test for determining whether a statute granting unequal privileges or immunities to differing classes of persons passes constitutional muster under Article I, Section 23: "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." 644 N.E.2d at 80. In applying this test, we exercise "substantial deference" to the legislature. *Id.*

■ As the Court of Appeals noted, and *Martin* reaffirmed, a classification scheme resulting in different treatment for medical malpractice plaintiffs as compared to other tort victims satisfies the first prong of *Collins. See Martin,* 711 N.E.2d at 1280–81. The only issue remaining is whether

the classes defined by discovery of the claims at different times in relation to the alleged occurrence of malpractice pass constitutional muster under the second prong of *Collins*. Specifically, the issue presented by Boggs' complaint is whether the statute of limitations is constitutional as applied to patients who discover the malpractice well before the expiration of the limitations period, but some time after the act of malpractice. We conclude that it is.

This Court has already resolved the constitutionality of an occurrence-based medical malpractice statute of limitations. *See Martin*, 711 N.E.2d at 1279 (citing *Rohrabaugh v. Wagoner*, 274 Ind. 661, 413 N.E.2d 891 (1980); *Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980)). The plaintiff may or may not be immediately aware of an injury from an act of malpractice and also may or may not be aware that the injury was attributable to an act or omission by a health care provider. Unless a plaintiff is immediately aware of both, there will be a lag between the occurrence and the discovery of the claim. Thus, medical malpractice plaintiffs will frequently, if not virtually always, have varying amounts of time within which to file their claims before an occurrence-based statute of limitations expires. But that difference in time to file is not sufficient to create an impermissible classification under Article I, Section 23. All statutes of limitations are to some degree arbitrary. The logic of the Court of Appeals would render every statute of limitations or repose a discovery-based statute as a matter of constitutional law. This would significantly undermine the fundamental objective of limitations periods, which recognizes value in the certainty generated by a known date after which a claim is either asserted or expires. Moreover, extending the statute has a price. Memories fade and witnesses and physical and documentary evidence can become unavailable over time. *Martin* subordinates these considerations to the extent necessary to permit a claim to be brought at all.

Here, however, we are not facing the practical impossibility of asserting the claim. Rather, Boggs or Carolyn could have brought a claim within the statutory period. As long as the claim can reasonably be asserted before the statute expires, the only burden imposed upon the later discovering plaintiffs is that they have less time to make up their minds to sue. The relatively minor burden of requiring a claimant to act within the same time period from the date of occurrence, but with less time to decide to sue, is far less severe than barring the claim altogether.

The Court of Appeals concluded that Boggs was "similarly situated" to the plaintiffs in *Martin* and *Van Dusen* because the Boggs, like those plaintiffs, could not have discovered the alleged acts of malpractice when they occurred. *See Boggs*, 716 N.E.2d at 50. Boggs is similar to the plaintiffs in *Martin* and *Van Dusen* in that respect, but quite different in another. Boggs or Carolyn had an 11-month window to file a medical malpractice claim after knowledge of the injury, yet did not. We hold that as long as the statute of limitations does not shorten this window of time so unreasonably that it is impractical for a plaintiff to file a claim at all, as it did in *Martin* and *Van Dusen*, it is constitutional as applied to that plaintiff. The statute reflects a legislative judgment to define the class who may proceed as those who discover their claim in time to file within two years after the occurrence. That judgment is entitled to deference, and permits all within the class, including Boggs, to bring their case to court, if they choose to do so, within the statutory period.

The Court of Appeals notes the possibility of discovery a very short time before the expiration of the limitations period. There may be situations where, like *Martin* and *Van Dusen*, discovering and presenting the claim within the time demanded by the statute is not reasonably possible. If so, the statute as applied un-

der those circumstances may run afoul of the Indiana Constitution. But Boggs is not in that category. In the future, this Court may be presented with facts that support a claim such as the hypothetical eve of midnight discovery posited by the Court of Appeals. For the moment, however, it remains a hypothetical. Indeed, the problem of a last minute discovery is inherent in any statute of limitations that may be tolled by concealment or related doctrines. It can best be addressed on a case-by-case basis, and, at least in this state, has apparently never arisen.

We are sympathetic to Boggs' complaint that it would have been difficult for him or Carolyn to file a claim while Carolyn was "fighting for her life." Indeed, seeking monetary compensation during such a time may be the furthest thing from a patient's mind.[2] However, given that the statute of limitations for filing a medical malpractice claim is only two years, presumably many victims of malpractice who discover their claims immediately will also find it necessary to engage in litigation while battling their medical condition, fatal or not. That is a decision the legislature has made.

## II. Fraudulent Concealment

■ The Court of Appeals concluded that Boggs could pursue his claim, and therefore did not need to address the doctrines of fraudulent concealment and continuing wrong. Because we disagree on the constitutional issue, we address these contentions as well. Boggs alleges that genuine issues of fact remain concerning whether the statute of limitations should be tolled by the doctrine of fraudulent concealment. Under that doctrine, a person is estopped from asserting the statute

of limitations as a defense if that person, by deception or violation of a duty, has concealed material facts from the plaintiff and thereby prevented discovery of a wrong. *Hughes v. Glaese*, 659 N.E.2d 516, 519 (Ind.1995). If the concealment is active, it is tolled until the patient discovers the malpractice, or in the exercise of due diligence should discover it. If the concealment is constructive, in this case by reason of an ongoing duty arising from the continuing physician-patient relationship, the statute of limitations is tolled until the termination of the physician-patient relationship, or, as in the active concealment case, until discovery, whichever is earlier. *See id.* Constructive concealment consists of the failure to disclose material information to the patient. *See id.* Active concealment involves affirmative acts of concealment intended to mislead or hinder the plaintiff from obtaining information concerning the malpractice. *See id.* at 521 (quoting *Keesling v. Baker & Daniels*, 571 N.E.2d 562, 565 (Ind.Ct.App.1991)). Under either strand of the doctrine, the patient must bring his or her claim within a reasonable period of time after the statute of limitations begins to run. *See id.* at 519.

■ Boggs alleges that the trial court erred in granting Tri–State's motion because discovery on the issue of fraudulent concealment was incomplete. Tri–State responds that Boggs had ample time to conduct relevant discovery prior to the hearing on the motion for a preliminary determination on March 9, 1998. It is generally improper for a court to grant summary judgment while reasonable discovery requests that bear on issues material to the motion are still pending. *See*

---

**2.** Although there is no easy way to get around the burdens of litigation in the midst of a health crisis, a plaintiff who is aware of the statutory limitations period may be able buy time by negotiating a waiver of the statute of limitations from the defendant. In addition, under the statute of limitations, a plaintiff is required to file a proposed medical malpractice complaint with the Indiana Department of Insurance before an action may be com-

menced in court. *See* Ind.Code § 34–18–8–4 (1998). This process may also be time consuming, but it is surely preferable to immediate full-blown litigation. A medical review panel may give a plaintiff a significant period of time in which to submit evidence, under Indiana Code § 34–18–10–3, in view of any physical hardship a plaintiff might be undergoing.

*Mutual Sec. Life Ins. Co. v. Fidelity & Deposit Co.*, 659 N.E.2d 1096, 1103 (Ind. Ct.App.1995). Boggs points to no discovery requests that were pending at the time of the hearing. He nonetheless argues that discovery would resolve four factual disputes. He identifies: (1) "[t]he duration of the physician/patient relationship"; (2) what Tri–State's radiologist knew when he made the July 1991 report; and (3) whether the period of time between Boggs' knowledge of the malpractice and the filing of the complaint was reasonable. He also points to the possibility of an "agency relationship" between Carolyn's treating physician and Tri–State, without specifying whether he contends Oswald was Tri–State's agent or vice versa.

■■■ Even if discovery were to establish that the physician-patient relationship between Tri–State and Carolyn did not terminate until August 12, 1992, that Tri–State was an agent of Carolyn's treating physician, or that Tri–State's radiologist had information he should have disclosed to Carolyn, the statute of limitations would not be tolled beyond August 12, 1992, the date of Carolyn's biopsy and knowledge of facts that led to the discovery of alleged malpractice. Thus, under any of these theories, Carolyn would have only a reasonable time beyond August 1992 to file her claim. As for the possible, but seemingly highly improbable, contention that Oswald was an agent of Tri–State, Boggs does not contend that the physician-patient relationship to Oswald extended beyond July 1992, and does not plead any agency relationship. In August 1992, eleven months remained under the occurrence-based statute of limitations. Boggs did not file his proposed complaint until July 1994, 22½ months later. Boggs asserts that the reasonableness of the delay should be determined by the jury, but he acknowledges that there is no precedent for this proposition. In response, Tri–State points to several cases where periods similar to or shorter than 22½ months were held to be unreasonable as a matter of law.

*See Cacdac v. Hiland*, 561 N.E.2d 758, 758 (Ind.1990) (22–month delay); *Cyrus v. Nero*, 546 N.E.2d 328, 331 (Ind.Ct.App. 1989) (22–month delay); *Spoljaric v. Pangan*, 466 N.E.2d 37, 43–44 (Ind.Ct.App. 1984) (14–month delay).

Although this Court is sympathetic to Boggs' predicament, there is nothing in the circumstances of this case to indicate that 22½ months was a reasonable time to delay filing suit. The trial court correctly concluded that the doctrine of fraudulent concealment did not bar Tri–State from asserting the statute of limitations as a defense.

### III. Continuing Wrong

■■■ Boggs also alleges that a question of material fact remains regarding the application of the doctrine of continuing wrong. The doctrine of continuing wrong is applicable where an entire course of conduct combines to produce an injury. *See Cyrus v. Nero*, 546 N.E.2d 328, 331 (Ind.Ct.App.1989). The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind.1991). When this doctrine attaches, the statute of limitations does not begin to run until the wrongful act ceases, and at that point the plaintiff may bring the claim within the normal statutory period. *See Cyrus*, 546 N.E.2d at 331.

Boggs relies on *Ferrell v. Geisler*, 505 N.E.2d 137, 140 (Ind.Ct.App.1987), in which the Court of Appeals concluded that a question of fact remained for the jury as to whether the patient's physicians' repeated failure to diagnose her breast cancer constituted a continuing wrong. In *Ferrell*, the plaintiff visited the defendants more than ten times over a span of two years, first concerned about lumps in her breasts, and then lumps under her arm. *See id.* at 138. Tri–State cites *Cyrus* for the proposition that a single incident cannot form the basis of a claim under the doctrine of continuing wrong. In *Cyrus*,

the plaintiff became pregnant after a failed sterilization. *See* 546 N.E.2d at 331.

Boggs alleges that the application of this doctrine places a material fact in issue because, "Tri–State interpreted, compared, and possessed both the July 1991 and the July 1992 mammograms." Because Tri–State's actions consisted solely of interpreting mammograms ordered and taken by Oswald's office at times selected by Oswald, this fact supports no continuing physician-patient relationship between Carolyn and Tri–State. *Cf. Babcock v. Lafayette Home Hosp.*, 587 N.E.2d 1320, 1323 (Ind.Ct.App.1992) (leaving a surgical sponge in a patient and misreading a chest x-ray are isolated events and do not together constitute a continuing wrong); *Cyrus*, 546 N.E.2d at 331. The trial court correctly concluded that the doctrine of continuing wrong was inapplicable to Boggs.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, J., concurs.

SULLIVAN, J., dissents with separate opinion in which RUCKER, J., concurs

SULLIVAN, Justice, dissenting.

I respectfully dissent.

I believe the outcome of this case is controlled by *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), and *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind.1999).

In *Martin*, the plaintiff alleged that she did not discover that she had been the victim of medical malpractice until more than two years after the alleged malpractice actually occurred. We held that the Medical Malpractice Act's two-year occurrence-based statute of limitations violated the Indiana Constitution as applied because, *inter alia*, it was not "uniformly applicable" to medical malpractice plaintiffs who did not discover the malpractice until more than two years after occurrence. *Martin*, 711 N.E.2d at 1281.

In *Van Dusen*, the plaintiff also alleged that he did not discover that he had been the victim of medical malpractice until more than two years after the alleged malpractice actually occurred. We held, consistent with *Martin*, that the Indiana Constitution saved his claim from application of the two-year statute of limitations. *Van Dusen*, 712 N.E.2d at 493. We then went on to address the question of the amount of time after discovery that the plaintiff had to file his claim. We concluded that the Act permitted plaintiffs in such circumstances to file their claims "within two years of the date when they discover the malpractice." *Id.*

*Van Dusen* dealt with a situation where the alleged malpractice was discovered more than two years after the alleged malpractice actually occurred; in this case, Boggs discovered the alleged malpractice within two years. But *Van Dusen* held that the statutory two-year time period is available to plaintiffs who do not discover malpractice until more than two years after occurrence. And, of course, plaintiffs who discover malpractice at the time of occurrence also have two years within which to file their claims. The majority opinion today, therefore, creates a class of plaintiffs to whom "the medical malpractice statute of limitations is not 'uniformly applicable.'" *See Martin*, 711 N.E.2d at 1281. This class consists of plaintiffs like Boggs who discover the malpractice after, but within two years of, occurrence. It seems to me that, paraphrasing *Van Dusen*, in order to effectuate legislative intent without doing violence to the Indiana Constitution, 712 N.E.2d at 496, we cannot make the two-year medical malpractice statute of limitations available to plaintiffs who do not discover the malpractice until more than two years after occurrence but deny it to those who discover within two years of occurrence.

I did not join the majority opinion in *Martin v. Richey*, believing precedent dictated that the occurrence-based Medical

Malpractice Act statute of limitations was constitutional. *Martin*, 711 N.E.2d at 1285 (Sullivan, J., concurring in result). But we established new precedents in *Martin* and *Van Dusen* to the effect that (1) the medical malpractice statute of limitations must be "uniformly applicable" to medical malpractice plaintiffs who do not discover the malpractice until more than two years after occurrence and (2) medical malpractice plaintiffs who discover the malpractice more than two years after occurrence have two years from the date of discovery to file their claims. It seems to me that these new precedents demand that if the medical malpractice statute of limitations is to be "uniformly applicable" to medical malpractice plaintiffs, all medical malpractice plaintiffs must have two years from the date of discovery to file their claims.

RUCKER, J., concurs.