John LING, Jr., and Board of Trustees of Vermillion County Hospital, Appellants–Defendants,

v.

James STILLWELL, as Personal Representative of the Estate of Doris R. Stillwell, Appellee–Plaintiff,

v.

Orville Lynn Majors, Vermillion County, Indiana, Dr. John Albrecht, Dr. Franklin Swaim, Dr. Joel Elias and Dr. Steven Waltz, Respondents.

No. 49A02–0002–CV–119.

Court of Appeals of Indiana.

Aug. 15, 2000.

Robert G. Weddle, Matthew W. Conner, Charles R. Whybrew, Tabbert, Hahn, Earnest & Weddle, LLP, Indianapolis, Indiana, Attorneys for Appellants.

Stephen L. Williams, Max E. Goodwin, Mann Law Firm, Eric Frey, Frey Law Firm, Joe Anderson, John C. Nichols, Anderson & Nichols, Terre Haute, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

### Case Summary

John Ling, Jr. and the Board of Trustees of Vermillion County Hospital (collectively referred to as the "Hospital")[1] appeal from the trial court's denial of its motion for summary judgment. We affirm.

### Issues

The Hospital raises three issues for our review, which we restate as:

1. Whether the trial court properly denied the Hospital's motion for summary judgment on the issue of the statute of limitations;

2. Whether the trial court properly considered Stillwell's designated evidence in ruling on the Hospital's motion for summary judgment; and

3. Whether the trial court improperly relied on the doctrine of collateral estoppel in ruling on the Hospital's motion for summary judgment.

### Facts and Procedural History[2]

▮ On August 1, 1994, Doris Stillwell died while a patient of the Intensive

1. Orville Lynn Majors, Dr. John Albrecht, Dr. Joel Elias, and Dr. Steven Waltz joined in the Hospital's briefs before this court. They, too, will be considered collectively as the Hospital.

2. The statement of the facts provided by the appellant is unacceptable. Appellant's statement of the facts, in their entirety, are as follows: "On August 1, 1994, Doris Stillwell died while a patient at Vermillion County Hospital. (R. at 20–21). On September 5, 1997, Stillwell filed his Proposed Complaint seeking to recover damages on account of the death of Doris Stillwell. (R. at 20–23)." Brief of Appellant at 3. We require "[a] statement of the facts relevant to the issues presented for review, with appropriate references

to the record." Ind. Appellate Rule 8.3(A)(5). Appropriate facts by which the issues can be decided are required; including facts which are skeletal, at best, does not assist this court in making a decision on three separate issues. We demand compliance with the rules of appellate procedure and recommend that counsel for appellant abide by all appellate rules in future briefs before this court. "Briefs should be prepared so that each judge, considering the brief alone and independent of the record, can intelligently consider and decide each issue presented. The brief must be prepared so that all questions can be determined from an examination of the brief alone because there is only one record to be shared among all the

Care Unit at Vermillion County Hospital. While a patient at the hospital, Doris was under the care of nurse Orville Lynn Majors. Because of the rise in the mortality rate at the hospital during Majors' employment there, a criminal investigation of Majors was started in March of 1995. The investigation of the epidemic level mortality rate at the hospital's intensive care unit ultimately ended in Majors' conviction for murder.

When Doris passed away, James Stillwell, her son, was unaware of the increase in the death rate at the hospital. The local newspaper reported on the investigation of the suspicious deaths in the summer of 1995 but no mention of Doris' death was included in the article nor was there any indication her death was a part of an investigation. Similarly, when Stillwell's attorney obtained a copy of the Survey of the Indiana State Department of Health in the fall of 1995, no specific reference to Doris or her death was made. This survey only revealed information pertaining to the death rate at the hospital as well as the hospital's questionable practices with respect to death charts of individuals, without mentioning specific patients, who died at the hospital. Stillwell learned of the preliminary results of the police investigation in the fall of 1996. Although some of these events occurred prior to the expiration of the two-year statute of limitations, they were tenuous at best and gave Stillwell no reason to suspect that his mother's death had been involved in Majors' criminal activity.

It was not until July 1997, that Stillwell became aware that the circumstances surrounding Doris' death had been part of the investigation, but documentation to identify victims of Major's misconduct was not available until December of 1997 when the police completed their investigation and filed charges against Majors.

After becoming aware in July 1997 of the fact that his mother's death was involved with the investigation, Stillwell promptly filed a proposed complaint on September 5, 1997, with the Indiana Department of Insurance seeking to recover damages because of Doris' death. Stillwell filed his complaint before the police finished their investigation and filed a probable cause affidavit in December of 1997 naming the numbers of people who died while Majors was working, and specifically naming six victims who the police had probable cause to believe Majors had murdered. Although Doris was not named as one of those six, this information provided Stillwell with concrete information that Majors was, indeed, involved in misconduct relating to many patients and confirmed his suspicions that his mother was also a victim.

The Hospital filed a motion for summary judgment alleging that Stillwell's complaint was not filed within the appropriate limitations period and therefore there was no genuine issue of material fact precluding entry of summary judgment in its favor.[3] The trial court denied the motion for summary judgment, and the Hospital properly instituted this Appellate Rule 4(B)(6) interlocutory appeal.

Additional facts will be provided as necessary.

### Discussion and Decision
### I. Summary Judgment Standard of Review

■ The purpose of summary judgment is to end litigation where no factual dispute

---

judges." *Paulson v. Centier Bank*, 704 N.E.2d 482, n. 2 (Ind.Ct.App.1998), *trans. denied*. We do note, however, that the rest of the brief was in compliance with our rules and because of the well-reasoned arguments we have chosen to decide this case on the merits despite the brief's lack of compliance in the statement of the facts section.

**3.** Additional defendants, including Majors, Dr. John Albrecht, Dr. Franklin Swaim, Dr. Joel Elias, and Dr. Steven Waltz, joined in the Hospital's motion for summary judgment.

exists and which may be determined as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App.1999). On review of a trial court's decision to deny summary judgment, our standard of review is well settled. We apply the same standard of review as the trial court: we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fawcett v. Gooch*, 708 N.E.2d 908, 909 (Ind.Ct.App.1999).

Summary judgment is appropriate only if "the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id.* (citing *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind. 1996)). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Choung*, 708 N.E.2d at 11. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubts as to any facts or inferences to be drawn therefrom will be resolved in favor of the non-moving party. *Id.*

## II. *Statute of Limitations*

Indiana Code section 34–18–7–1(b) states that

[a] claim, whether in contract, or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect....

The Hospital alleges that the statute of limitations for Stillwell's claim began to run on the day that Doris died because the statute is occurrence-based. By the Hospital's interpretation of the statute, the limitations period ran on August 1, 1996, two years after the death of Doris, and Stillwell's complaint, filed September 5, 1997, was not timely. Thus, the Hospital claims that its motion for summary judgment should have been granted based on the statute of limitations.

The Hospital concedes that previous cases, including *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), and *Harris v. Raymond*, 715 N.E.2d 388 (Ind.1999), provide factual scenarios where the statute providing an occurrence-based limitations period was unconstitutional as applied to those plaintiffs. The Hospital contends, however, that those cases involved diseases which had latency periods which made it impossible for the plaintiffs to discover their conditions during the limitations period. Here, the Hospital argues, Stillwell was aware of a potential claim within the limitations period but nonetheless failed to file a claim within the appropriate two-year period and thus, the occurrence-based statute of limitations is not unconstitutional as applied to Stillwell.

Stillwell claims that under the circumstances of this case, the application of the occurrence-based two-year statute of limitations would unconstitutionally deprive him of a medical malpractice claim for Doris' death. We agree.

In *Martin*, our supreme court held that the statute of limitations is unconstitutional, as applied, when "it requires a plaintiff to file a claim before [he or] she is able to discover the alleged malpractice and [his or] her resulting injury, and, therefore, it imposes an impossible condition on [his or] her access to the courts and pursuit of [his or] her tort remedy." 711 N.E.2d at 1279. Thus, a plaintiff cannot be foreclosed from bringing a malpractice action when the plaintiff could not reasonably be expected to discover the alleged malpractice and injury within the two-year statutory period given the nature of the malpractice or medical condition. *Id.* at 1282.

Although technically aware of Doris' ultimate injury, her death, on August 1, 1994, Stillwell had no way of knowing that it was the possible result of malpractice until much later. When Doris passed away, Stillwell was told that she had died of natural causes; her death certificate listed the cause of death as " 'Cardiac Arrythmia' [sic] and 'Coronary Heart Disease.' " Brief of Appellee at 10–11. No mention was made of irregularities in the death of his mother or other patients at the hospital and no independent knowledge of the irregularities was available to Stillwell at this time. The events which surrounded the investigation prior to the expiration of the limitations period, including newspaper articles and the survey which Stillwell himself did not see, did not put Stillwell on notice such that he knew or should have known that Majors was involved with his mother's death. Further, the results of the preliminary investigation were not available until the fall of 1996, after the expiration of the limitations period. Once Stillwell had the suspicion that Doris' death was possibly the result of inappropriate medical treatment and negligence, Stillwell pursued his claim by consulting an attorney who was already involved in other litigation concerning Majors.

Clearly, there was information available to Stillwell and his attorney that there was an investigation on the epidemic death rates at the hospital as early as 1995, a year before the statute would expire. However, faced with threats from counsel for the Hospital's medical staff that they would pursue suit against Stillwell's counsel for filing "frivolous lawsuits," Stillwell's attorney chose, with respect to the related class action case, to seek extensions of time until the investigation was complete. Additionally, Stillwell was not aware that Doris' death was suspect until July of 1997 and the police did not finish their investigation until December of 1997. Therefore, because the two-year limitations period expired on August 1, 1996, Stillwell's actual knowledge that his mother's death was a part of the investigation did not occur until after the two-year statute of limitations had expired. Two months after he realized that Majors was involved and his mother's death was under investigation, he filed suit. Certainly, given the situation in this case, Stillwell acted reasonably and could not have reasonably been expected to discover that his mother's death could have been the result of misconduct, medical malpractice, or negligence until after the limitations period had passed. Given the facts and circumstances of this case, the two-year statute of limitations is unconstitutional as applied to Stillwell and the trial court did not err in denying the Hospital's motion for summary judgment.[4]

### III. *Evidence*

■ The Hospital argues that the evidence designated by Stillwell lacks specificity as well as detailed references in the

---

4. The Hospital has directed our attention to additional authority which has been handed down since the commencement of this appeal. In a recent decision, *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 697 (Ind.2000), our supreme court held that the statute of limitations is constitutional when one discovers malpractice before the expiration of the limitations period but some time after the act of malpractice. When one is aware of the malpractice within the limitations period and is not facing the practical impossibility of asserting a claim, that claim must be brought within the two year limitations period. *Id.* In *Boggs,* the Supreme Court reasoned that there was an eleven-month window prior to the expiration of the two-year statute of limitations within which a suit could have been

brought. Thus, although having less than the full two years to decide to sue, strict application of the two-year limitations period was not unconstitutional. *Id.* "[A]s long as the statute of limitations does not shorten this window of time [within which to file a claim] so unreasonably that it is impractical for the plaintiff to file a claim at all, ... it is constitutional as applied to that plaintiff." *Id.* Essentially, although *Boggs* does direct us to the Supreme Court's interpretation of the constitutionality of the statute when one *knows* of the malpractice prior to the expiration of the limitations period, it is not applicable here because we hold that Stillwell did not actually discover nor was there reason to know of the malpractice until after the limitations period ran.

memorandum in opposition to the motion for summary judgment. Therefore, the Hospital asserts that the trial court should not have relied upon any of Stillwell's factual assertions in making its determination to deny the Hospital's motion for summary judgment.

Indiana Trial Rule 56(C) directs that a party opposing a motion for summary judgment shall designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto."

In his designation of evidence, Stillwell included the following:

1. The Affidavit of James Stillwell which is Exhibit A to this Designation;

2. A certified copy of the Probable Cause Affidavit filed December 29, 1997 in Cause No. 83C01–97–12–CF–00074 ... which is designated as Exhibit B;

3. Portions of the deposition of Dr. John Albrecht taken June 17, 1999 which are attached hereto as Exhibit C;

4. The Affidavit of Eric A. Frey, attached hereto as Exhibit D and exhibits attached thereto, namely, The Agreement between the Commissioner of Insurance and Vermillion County Hospital, PHICO, et al., attached thereto as Exhibit A; the Motion for Summary Judgment filed by Vermillion County Hospital, the Order Denying Summary Judgment entered by the Honorable Gerald Zore, Judge, Marion Superior Court, and a copy of the Order Denying Petition to Certify Interlocutory Appeal entered by The Honorable Gerald Zore on December 7, 1999.

R. 40.

Although the Hospital contends that Stillwell's designation does not list "factual matters which he believes are in dispute with specific references to the location of the factual assertions in the record" or contain a brief synopsis of why the facts are material, the Hospital concedes that a designation will not fail for lack of specificity if more detailed references are provided in an accompanying memorandum. Brief of Appellant at 12. However, the Hospital continues to argue that Stillwell failed to make detailed references in his memorandum. We disagree.

First and foremost, the designation of evidence offered by Stillwell is in no way inappropriate or lacking in specificity. Affidavits are taken for the sole purpose of proving evidence; naturally, the entire affidavit of Stillwell and Frey would be included. As for the deposition of Dr. Albrecht, Stillwell designated only those certain parts which he attached thereto. Additionally, including documents in their entirety may be necessary. We hold that Stillwell's designation of evidence is appropriate. Further, merely because Stillwell did not designate the evidence as specifically as the Hospital would have liked, or perceives it to be in its opinion, does not mean that the designation was not specific enough or proper for the trial court's consideration.

■ Further, specificity is the mandate, but how a party chooses to specifically designate material is not mandated and therefore, whether a party chooses to specify evidence in a summary judgment motion, separate filing of designation, or in a memorandum in support or opposition to the motion for summary judgment is within the party's discretion. *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n.*, 645 N.E.2d 608, 615 (Ind.Ct. App.1994). Thus, even if references were "broad" within Stillwell's memorandum in opposition to summary judgment, the designation alone was specific enough. Further, we have held that "as long as the trial court is apprised of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment, then the material may be considered." *Id.* Moreover, the Hospital itself cites the following reference by Stillwell in his Brief in Opposition to summary

judgment: "See the Survey of the State Department of Heath, Exhibit B, pp. 1–8 and the Excerpts of Testimony of Albrecht pp. 46–56." Brief of Appellant at 12. We are hard-pressed to see how Stillwell could have been more specific than providing page numbers. The Hospital's argument is devoid of merit. Here, the trial court was apprised of the evidence and there was no error.

## IV. Collateral Estoppel

In a separate case in another Marion County court concerning the death of another patient involving Majors where the Hospital was also a defendant, the Hospital filed a motion for summary judgment asserting that the claim had been filed outside of the limitations period. The motion was denied. Thus, Stillwell argued that because the motion for summary judgment had been denied in that case on essentially the same issue, collateral estoppel precluded the Hospital from trying to adjudicate the issue again. The Hospital contends that the trial court erred in denying its motion for summary judgment because relying on collateral estoppel in its decision was in error.[5] Because it is not necessary for our determination on this issue, we decline to address whether the prior decision to deny summary judgment was "the same issue" so that collateral estoppel would apply here.

On review of a trial court's determination on a summary judgment motion, we will affirm on any theory which the designated materials support. *Ryobi Die Casting v. Montgomery*, 705 N.E.2d 227, 229 (Ind.Ct.App.1999), *trans. denied.*

Further, we are not limited to reviewing the trial court's reasons for its decision on the motion. *Id.*

Here, the trial court's denial of the motion for summary judgment merely stated, "[c]omes now [the Hospital], by counsel, having filed a Motion for Summary Judgment, and the Court, being duly advised in the premises, denies the Motion." R. 296. Thus, the Hospital has erred in assuming that the trial court based its decision on the collateral estoppel theory. There was designated evidence before the trial court by which the decision to deny the motion was proper. Thus, the denial of summary judgment was appropriate.

## Conclusion

We hold that the trial court did not err in denying the Hospital's motion for summary judgment. Because Stillwell did not have reason to know, nor should he have known, that his mother's death was attributable to negligence until after the two-year limitations period had expired, his claim was properly filed. Further, his designation of evidence was proper, and the trial court could deny the motion for summary judgment on any theory the evidence supports and did not improperly rely on collateral estoppel. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

SHARPNACK, C.J., and BAKER, J., concur.

---

[5]. When an issue has been previously decided in another cause of action, it is subject to the doctrine of res judicata, and in the case of a specific issue, collateral estoppel. "Collateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Wilcox v. State*, 664 N.E.2d 379, 381 (Ind.Ct.App. 1996) (citations omitted). Where issue preclusion applies, the first adjudication will be held conclusive, even if the second is on a different claim. *Id.* Thus, collateral estoppel, or issue preclusion, as it is sometimes called, means that "when an ultimate issue of fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Davis v. State*, 691 N.E.2d 1285, 1288 (Ind.Ct.App.1998) (citation omitted). Thus, the subsequent relitigation of an issue adjudicated in a former suit, if that same issue is presented by the same parties in the subsequent suit, is barred. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind.1998).