Marlys BATTEMA, Appellant–Plaintiff,

v.

Sally A. BOOTH, Boynton H. Booth, M.D., P.C., and Boynton H. Booth, M.D., Appellees–Defendants.

No. 49A02–0512–CV–1185.

Court of Appeals of Indiana.

Sept. 13, 2006.

Jennifer L. Graham, Indianapolis, IN, Attorney for Appellant.

Robert G. Weddle, Charles R. Whybrew, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Marlys Battema appeals the trial court's order granting the petition for preliminary determination of law filed by Sally A. Booth ("Dr. Sally"), Boynton H. Booth, M.D., P.C., and Boynton H. Booth, M.D. ("Dr. Boynton") (collectively, "Appellees"). We reverse and remand.[1]

### Issues

Battema raises five issues, which we consolidate and restate as follows:

---

1. On March 31, 2006, Battema filed a motion to strike portions of Appellees' brief, upon which we need not rule, in light of our reversal in her favor.

I. Whether Appellees' failure to file a copy of the proposed complaint cited in their petition is fatal to the trial court's judgment; and

II. Whether the trial court erred in finding that, as a matter of law, Battema's medical malpractice claim is barred by the statute of limitations.

### Facts and Procedural History

The facts most favorable to Battema, the non-moving party, are as follows. In 1994, Dr. Sally joined the dermatology practice of her father, Dr. Boynton. Dr. Sally's mother, Joann, worked as a nurse for the practice.[2] Battema was a patient of Dr. Boynton for at least eight years before Dr. Sally began working at his office. Over the years, Dr. Boynton treated Battema for various dermatological matters, including moles, warts, and hives. She had a large birthmark on her neck, chest, and shoulder for which Dr. Boynton could not and did not provide treatment.

In late 1995 or early 1996, Battema asked Dr. Boynton if he knew of any new dermatological treatments that could improve the appearance of her birthmark. Dr. Boynton told Battema that Dr. Sally had experience in treating birthmarks, and he referred Battema to her. After examining Battema, Dr. Sally recommended that she undergo a pulse laser procedure to remove the birthmark. On March 18, 1996, Dr. Sally performed the procedure on Battema's neck, chest, and shoulder. Battema saw Dr. Sally at least twice for follow-up visits after the surgery. The treated area was "weeping and oozing."

Appellant's App. at 142. The procedure left Battema with scarring and darkened pigmentation over an eighty-square-inch area on her neck, chest, and shoulder. Dr. Sally told Battema that this was an "unfortunate outcome" and that there was nothing Dr. Sally could do to improve the results. *Id.* at 143.

Unbeknownst to Battema, Dr. Sally was a narcotics addict and had first sought treatment for chemical dependency in 1979. She had remained sober from 1981 through 1995 but has since relapsed at least twice. Her father knew of her addiction history when he invited her to join his practice. There, Dr. Sally had virtually unlimited access to narcotics such as Fentanyl[3] and Demerol. She ordered these drugs from a nearby pharmacy, and on at least one occasion, she frantically asked a nurse in the office whether her drugs had arrived. No one recorded the type or amount of prescription drugs that were delivered to the office. By late 1995, at least one employee, Nurse Andrea Curley, suspected that Dr. Sally was under the influence of drugs while treating patients. In or around June 1996, Dr. Sally suffered an apparent drug overdose in the office and fell to the floor, causing a gash on the side of her head. Her eyes rolled back, and she was stiff and rigid. When an office nurse attempted to call 9–1–1, Joann hung up the phone. She then took Dr. Sally down the building's back stairway and drove away with her. The next day, Dr. Sally arrived at the office with a black eye. Joann and Dr. Sally told patients that Dr. Sally had fallen off a horse. Dr.

---

2. Nurse Andrea Curley testified in her November 1, 2004, deposition that Joann held herself out as a nurse but that she actually had no nursing degree. Dr. Boynton stated in his deposition that Joann was not a registered nurse but that "you don't need [a nurs-

ing license] to work in a doctor's office." Appellant's App. at 95.

3. Nurse Andrea Curley testified that Fentanyl is a "heavy duty" narcotic that is not generally used by dermatologists. Appellant's App. at 159.

Sally begged Joann to let her leave the office that day, but Joann refused, physically pushing her into examination rooms to treat patients. The day after Dr. Sally overdosed, a prescription drug sign-out policy was instituted in the office.

In early 1997, Battema saw dermatologist W. Gregory Chernoff, M.D., who also described the laser procedure's results as "unfortunate." *Id.* at 143. Dr. Chernoff treated severe scarring in one small area of the birthmark. He did not indicate to Battema in any way that Dr. Sally might have been negligent in her treatment of Battema.

In July 2003, Battema saw Dr. Boynton for treatment of a skin tag, at which time she specifically asked about Dr. Sally, who had left the practice. Dr. Boynton and Joann told Battema that Dr. Sally had taken a research position. No one at Dr. Boynton's office ever informed Battema that Dr. Sally had a history of narcotics addiction or that her license to practice medicine had been suspended indefinitely in 1998 as a direct result of her inability to maintain sobriety.[4]

In November or December of 2004, Battema first learned of Dr. Sally's addiction struggles. Around that same time, Battema discovered that Dr. Boynton and Joann knew about Dr. Sally's addiction issues when Dr. Boynton allowed her to join the practice. Shortly thereafter, Battema hired an attorney and filed a proposed complaint (the "Proposed Com-

plaint") with the Indiana Department of Insurance on January 31, 2005. On August 1, 2005, Appellees filed a petition for preliminary determination of law with the trial court, arguing that, as a matter of law, Battema's claim was barred by the applicable statute of limitations for medical malpractice.[5] In their supporting memorandum, Appellees cited to the Proposed Complaint on file with the IDOI but failed to file it with the trial court. On October 21, 2005, Appellees filed a request to add evidence to the record before the trial court, specifically referencing the Proposed Complaint. On November 2, 2005, the trial court granted Appellees' request, permitting a ten-day extension to submit additional evidence. That same day, the court entered an order granting Appellees' petition for preliminary determination of law. Appellees never submitted additional evidence. On December 20, 2005, the trial court, at Battema's request, certified its order as a final judgment, and she now appeals.

### Discussion and Decision

#### I. *Designation of Proposed Complaint*

■ There is no dispute that Appellees cited the Proposed Complaint in their petition for preliminary determination of law and supporting memorandum but failed to file a copy of the Proposed Complaint with the trial court. Battema contends that this omission should have been fatal to Appellees' petition. She cites a decision of this Court in which we reversed the trial

4. At a July 23, 1998, hearing before the Medical Licensing Board of Indiana, the medical director of the Indiana State Physicians Assistance Program testified that Dr. Sally "[has] exhibited over and over that she will use drugs and practice medicine. And there is nothing in my understanding that says that has changed." Appellant's App. at 106.

5. Indiana Code Section 34–18–11–1(a) states in pertinent part:

> A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, ... preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure.

court's granting of a motion for partial summary judgment because the moving party failed to file the documents identified in its designation of evidence. *Thomas v. N. Cent. Roofing,* 795 N.E.2d 1068 (Ind.Ct. App.2003). In that case, we stated,

> North Central failed to satisfy [its] burden [of making a prima facie showing that there are no genuine issues of material fact] because it failed to file with the trial court *any evidence* in support of its motion for partial summary judgment. Because North Central failed to comply with the requirements of Ind. Trial Rule 56(C), the trial court did not have all the designated evidence before it when it granted North Central's motion for partial summary judgment. The trial court could not have ruled on North Central's motion for partial summary judgment when North Central failed to file with the trial court *any evidence* in support of its motion.

*Id.* (emphases added).

Battema claims that, as in *North Central,* the trial court in the instant case "did not have the record [of] evidence on which [Appellees] relied or on which it could base a grant of summary judgment in favor of [Appellees] on their petition for preliminary determination of law." Appellant's Br. at 17. We disagree. In *North Central,* the movant did not file *any* evidence in support of its motion. In the instant case, however, Appellees included Batte-

ma's medical records.[6] As for the Proposed Complaint, Battema did not dispute the date of its filing as set forth by Appellees—January 31, 2005—or its contents, as summarized in Appellees' petition.[7] With knowledge of the Proposed Complaint's filing date, the trial court was able to determine that it had jurisdiction over the matter for purposes of making a preliminary determination of law. *See* Ind.Code § 34–18–11–1. Having a copy of the Proposed Complaint before it was otherwise irrelevant to the court's ruling on the petition.

In sum, Appellees informed the trial court of the Proposed Complaint's filing date, and Battema did not dispute this fact, and in fact confirmed it by stating that she filed suit in January 2005. Thus, the fact that the actual document was not before the trial court was not fatal to Appellees' petition.

## II. Statute of Limitations

▉▉▉▉ Appellees argue, and the trial court agreed, that, as a matter of law, the statute of limitations bars Battema's medical malpractice claim. Battema claims that the statute is unconstitutional as applied to her. Our standard of review is well settled.

> A motion for preliminary determination, when accompanied by evidentiary matters, is akin to a motion for summary judgment and is subject to the

---

**6.** On September 16, 2005, Battema filed a motion to strike and expunge her medical records "in order to prevent further dissemination of plaintiff's and her spouse's private financial and identifying information to the world at large." Appellant's App. at 77. The trial court did not grant her motion, but in response, on October 5, 2005, ordered the records sealed.

**7.** In their petition, Appellees summarized the Proposed Complaint as follows: "In the Proposed Complaint, Battema alleges that [Dr.]

Sally negligently performed a full face CO2 laser procedure on Battema's shoulder and chest and failed to provide appropriate post-operative care and treatment of Battema's shoulder and chest." Appellant's App. at 30. In her brief in opposition to Appellees' petition, Battema stated that she "caused this lawsuit to be filed in January of 2005," citing the same language in her own affidavit. Appellant's App. at 179. Nowhere in her response did she dispute the January 31, 2005, filing date.

same standard of appellate review as any other summary judgment · disposition. Upon review of a summary judgment determination, we apply the same standard applied by the trial court: where the evidence shows that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate. We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party.

*Jacobs v. Manhart*, 770 N.E.2d 344, 348–49 (Ind.Ct.App.2002) (citations omitted).

■ Generally, a medical malpractice claim must be filed within two years from the date of the alleged occurrence, not from the date of discovery. *Martin v. Richey*, 711 N.E.2d 1273, 1279 (Ind.1999). Our supreme court has held that the occurrence-based statute of limitations is constitutional when a plaintiff discovers the alleged malpractice before the expiration of the two-year limitations period but after the act of malpractice, so long as application of the statute does not shorten the time for filing a proposed complaint so unreasonably that it is impractical. *Boggs v. Tri–State Radiology*, 730 N.E.2d 692, 697 (Ind.2000). The statute has also been found unconstitutional, however, as applied to plaintiffs who, in the exercise of reasonable diligence, could not have discovered the alleged malpractice within the two-year period. *Martin*, 711 N.E.2d at 1285.

In the trial court's order granting Appellees' petition, it concluded that *Boggs* required application of the two-year statute of limitations, because Battema had obvious scarring after Dr. Sally performed the laser procedure. The court stated that she should have been charged with discovery of the alleged malpractice at the time she presented to Dr. Chernoff for treatment of the scars, less than a year after

the laser procedure. Battema argues, however, that she could not have discovered Dr. Sally's alleged malpractice in the two years following her procedure because Dr. Chernoff did not inform her that her injuries might have been caused by Dr. Sally's negligence. Nor did Dr. Sally's parents, Dr. Boynton and Joann, inform Battema of Dr. Sally's narcotics addiction or her medical license suspension. Following the procedure at issue, Dr. Sally told Battema that the scarring was an "unfortunate outcome," and Dr. Chernoff used the same words. Appellant's App. at 142–43.

The trial court distinguished two cases cited by Battema in which the occurrence-based statute of limitations was found unconstitutional as applied to the plaintiff. *See Martin*, 711 N.E.2d 1273; *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind.1999). In *Martin* and *Van Dusen*, the plaintiffs did not have any symptoms that would have put them on notice that malpractice might have occurred. Both plaintiffs suffered from latent diseases—Martin from breast cancer and Van Dusen from prostate cancer—that in the exercise of reasonable diligence could not have been discovered within two years after the treatment at issue. The trial court found that these cases did not apply here because Battema experienced noticeable scarring shortly after Dr. Sally performed the procedure. We agree that *Martin* and *Van Dusen* are not particularly persuasive in Battema's case.

We do not agree, however, with the trial court's conclusion that *Ling v. Stillwell*, 732 N.E.2d 1270 (Ind.Ct.App.2000), is irrelevant here. In *Ling*, Doris Stillwell died while a patient in the intensive care unit at Vermillion County Hospital. She was under the care of nurse Orville Lynn Majors, who was later convicted of murdering many ICU patients. Doris died on August 1, 1994, but it was not until July

1997 that her son discovered that Doris's death was part of the police investigation surrounding Majors. He filed a proposed complaint on September 5, 1997, and the hospital claimed that the claim was barred by the statute of limitations. This Court affirmed the trial court's denial of the hospital's motion for summary judgment, finding that although Doris's son was "technically aware of [her] ultimate injury, her death," he had no way of knowing that it might have resulted from malpractice until more than two years later. *Id.* at 1275. Similarly, in the instant case, Battema was aware of an "unfortunate result" shortly after the procedure performed by Dr. Sally, but she was not necessarily aware that the scarring could have been caused by malpractice until she found out that Dr. Sally was a recovering narcotics addict and had experienced a relapse around the time of the procedure.

Approximately two months after the trial court ruled in the instant case, our supreme court issued an important decision regarding application of the statute of limitations to medical malpractice actions. *See Booth v. Wiley,* 839 N.E.2d 1168 (Ind. 2005). In that case, a patient who suffered from glaucoma and cataracts filed suit against his optometrist and eye surgeon, claiming that he had sustained permanent vision loss after having allegedly ill-advised Lasik surgery. Although his vision loss was noticeable within several months following the Lasik surgery, the patient argued that it was not until over two years later that a physician told him that Lasik surgery should not have been performed because of his preexisting cataracts and glaucoma. The doctors argued that because the patient knew one year after surgery that his right eye had extensive damage, causing a permanent loss of vision, he knew of the alleged malpractice, or at least possessed facts that, in the exercise of reasonable diligence, should have led to

the discovery of the alleged malpractice. *See id.* at 1172–73. In *Booth,* our supreme court found in favor of the plaintiff and outlined the methodology that should guide the application of the medical malpractice statute of limitations as follows:

> Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period.

*Id.* at 1172. In the instant case, we simply cannot conclude that, as a matter of law, Battema possessed enough information within two years after her laser procedure to lead a reasonably diligent person to conclude that malpractice had occurred.

 Finally, there is the issue of fraudulent concealment. When a defendant, by deception or violation of a duty, has concealed material facts from a plaintiff, preventing the discovery of a wrong, the defendant is estopped from asserting a statute of limitations defense. *Boggs,* 730 N.E.2d at 698. There are two types of fraudulent concealment, active and constructive. *Id.* If the concealment is constructive, meaning the failure to disclose material information to the patient, then

the statute of limitations is tolled until the termination of the physician-patient relationship, or until discovery of the alleged malpractice, whichever is earlier. *Id.* If the concealment is active, the statute begins to run when the patient discovers the alleged malpractice, or in the exercise of due diligence should discover it. *Id.* "Under either strand of the doctrine, the patient must bring his or her claim within a reasonable period of time after the statute of limitations begins to run." *Id.*

Here, Battema presented evidence that Dr. Boynton and Joann failed to inform her of Dr. Sally's narcotics addiction and that, in fact, they failed to monitor Dr. Sally's access to prescription drugs until after she overdosed in the office. Battema also presented evidence that Joann attempted to hide her daughter's addiction by preventing an employee from calling 9–1–1 when Dr. Sally overdosed and by lying to patients about the cause of Dr. Sally's black eye. In our view, Battema has presented enough evidence to at least raise a question of fact as to whether the doctrine of fraudulent concealment applies in this case, and, if so, whether the concealment was active or constructive, when the statute began to run under that doctrine, and whether Battema filed her proposed complaint within a reasonable time period after her discovery of Dr. Sally's alleged malpractice.

In sum, the trial court erred in finding no genuine issues of material fact with regard to Battema's medical malpractice claim. We therefore reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, C.J., and BAILEY, J., concur.