**Robert L. COFFER, Appellant–Plaintiff,**

v.

**George W. ARNDT, Jr., Appellee–Defendant.**

No. 49A02–9910–CV–720.

Court of Appeals of Indiana.

July 20, 2000.

Jon R. Pactor, Indianapolis, Indiana, Attorney for Appellant.

Arlene Rochlin, Cincinnati Insurance Company, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Robert Coffer ("Coffer") appeals the trial court's grant of summary judgment in favor of appellee-defendant George Arndt, Jr., O.D. ("Arndt"). We affirm.[1]

### Issues

■ Coffer presents two[2] issues, which we restate as follows:

I. whether the trial judge properly determined that the two-year statute of limitation barred Coffer's action; and,

II. whether the trial court properly struck the second affidavit of a witness.

### Facts and Procedural History

Arndt, an optometrist, performed periodic routine eye examinations on Coffer from 1975 through 1995. Arndt did not see or treat Coffer after September or October of 1995. At that time, Arndt referred Coffer, who was complaining of temporary blindness, to Charles McCormick, M.D. ("McCormick"), an ophthalmologist. On November 14, 1995, Coffer saw McCormick, who referred him to Louis Cantor, M.D. ("Cantor"), an ophthalmologist specializing in the treatment of glaucoma. Cantor examined Coffer on December 19, 1995 and concluded that he had glaucoma and that he had had it for several years. Since the glaucoma diagnosis, Coffer has undergone nine eye surgeries and expects to have more.

On December 19, 1997, Coffer filed a proposed medical malpractice complaint against Arndt with the Department of Insurance. Coffer filed a proposed complaint in the Marion Superior Court on

January 12, 1998. In January of 1999, Arndt filed a motion for summary judgment, arguing that Coffer should have filed his action within two years of November 14, 1995, and designating, *inter alia,* Cantor's affidavit. Coffer filed a motion in opposition to summary judgment, along with a brief, a designation, Coffer's affidavit, a second affidavit of Cantor, excerpts from Arndt's deposition, and parts of Coffer's deposition. Arndt replied and attempted to strike Coffer's affidavit and Cantor's second affidavit. Coffer responded. Arndt again replied.

Following a July 1999 hearing, the court struck Cantor's second affidavit, did not strike Coffer's affidavit, and granted summary judgment in Arndt's favor. In August of 1999, Coffer filed a motion to correct error and to clarify. After an amendment by Coffer and a statement in opposition by Arndt, the court denied the motion to correct error. The court clarified it had found that the statute of limitations began to run on Coffer's claim "upon his treatment by [McCormick] in November, 1995."

### Discussion and Decision

#### I. Statute of Limitation

Coffer contends that at his December 19, 1995 appointment with Cantor, he learned for the first time that he had glaucoma and that he had had it for many years. He asserts that the court erroneously determined: (1) that Coffer learned of his illness on November 14, 1995; and, (2) that Coffer's complaint, filed more than two years later, was untimely.

■ "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law."

---

1. We commend both parties for their superior presentations during the June 6, 2000 oral argument of this case.

2. In his reply brief, Coffer also seeks redress "for the unprofessional behavior of Cincinnati Insurance." "New arguments made in a re-

ply brief are inappropriate and will not be considered on appeal." *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 144 (Ind.Ct.App.1995), *trans. denied.* Therefore, this issue is waived. *See id.*

*Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996); *see* Ind. Trial Rule 56(C). "The trial court's grant of summary judgment is clothed with a presumption of validity and the appellant bears the burden of proving that the trial court erred." *Bamberger*, 665 N.E.2d at 936. In reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any question of fact or an inference to be drawn therefrom in favor of the non-moving party. *Id.* "Specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on this court." *Golitko v. Indiana Dept. of Correction*, 712 N.E.2d 13, 15 (Ind.Ct.App.1999), *trans. denied.* "We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court." *Bamberger*, 665 N.E.2d at 936.

■ The statute of limitations enunciated in the Indiana Medical Malpractice Act reads in pertinent part:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect....

IND.CODE § 34–18–7–1(b). This statute is an occurrence-based rather than a discovery-based statute of limitations. *See Martin v. Richey*, 711 N.E.2d 1273, 1278 (Ind. 1999).

In *Martin*, the plaintiff was unable to discover that she had breast cancer until after the two-year occurrence-based statute of limitations had run. The *Martin* court held that the statute of limitations

was unconstitutional as applied to the plaintiff on two grounds: (1) it violated Indiana Constitution, Article I, Section 23,[3] as applied to the plaintiff because it is not "uniformly applicable" to all medical malpractice victims; and, (2) it violated Indiana Constitution, Article I, Section 12 "because it requires plaintiff to file a claim before she is able to discover the alleged malpractice and her resulting injury, and, therefore, it imposes an impossible condition on her access to the courts and pursuit of her tort remedy." *Id.* at 1279.

In a companion case, our supreme court stated:

> To the extent that the legislature intended to create a statute of limitations that always runs from the date of the occurrence of the alleged negligent act, even when the malpractice and resulting injury cannot be discovered during the limitations period given the nature of the asserted malpractice and the medical condition, then, of course, we cannot effectuate this particular legislative intent without doing violence to the Indiana Constitution.
>
> ....
>
> ... We construe section 34–18–7–1(b) to permit plaintiffs like Martin and the Stottses—that is, plaintiffs who, because they suffer from cancer or other similar diseases or medical conditions with long latency periods and are unable to discover the malpractice and their resulting injury within the two-year statutory period—to file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.

*Van Dusen, M.D. v. Stotts*, 712 N.E.2d 491, 496–97 (Ind.1999) (concluding that complaint had been timely filed by plaintiff, who was besieged by cancer the laten-

**3.** Article I, Section 23 of the Indiana Constitution, the Privileges and Immunities Clause states: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

cy of which made it impossible for him to discover the malpractice until after the two-year occurrence-based statute of limitations had run).

■ Neither *Martin* nor *Van Dusen* addressed the threshold issue presented by Coffer's case, that is, whether the statute of limitations is constitutional as applied to patients who discover the malpractice well before the expiration of the limitations period, but some time after the act of malpractice. However, since the briefing and the oral argument in Coffer's case, our supreme court has resolved the issue, holding that "the Indiana Constitution is not violated by application of the Medical Malpractice Act's two-year limitations period to bar a claim that was discovered several months before the limitations period expired and well within two years of its occurrence." *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 694 (Ind.2000), (reversing *Boggs v. Tri–State Radiology, Inc.*, 716 N.E.2d 45 (Ind.Ct.App.1999)).

In the *Boggs* majority opinion, our supreme court explained:

> The plaintiff may or may not be immediately aware of an injury from an act of malpractice and also may or may not be aware that the injury was attributable to an act or omission by a health care provider. Unless a plaintiff is immediately aware of both, there will be a lag between the occurrence and the discovery of the claim. Thus, medical malpractice plaintiffs will frequently, if not virtually always, have varying amounts of time within which to file their claims before an occurrence-based statute of limitations expires. But that difference in time to file is not sufficient to create an impermissible classification under Article I, Section 23 [of the Indiana Constitution]. All statutes of limitations are to some degree arbitrary. The logic of the Court of Appeals would render every statute of limitations or repose a discovery-based statute as a matter of constitutional law. This would significantly undermine the fundamental objective of limitations periods, which recognizes value in the certainty generated by a known date after which a claim is either asserted or expires. Moreover, extending the statute has a price. Memories fade and witnesses and physical and documentary evidence can become unavailable over time. *Martin* subordinates these considerations to the extent necessary to permit a claim to be brought at all. Here, however, we are not facing the practical impossibility of asserting the claim. Rather, Boggs or Carolyn could have brought a claim within the statutory period. As long as the claim can reasonably be asserted before the statute expires, the only burden imposed upon the later discovering plaintiffs is that they have less time to make up their minds to sue. The relatively minor burden of requiring a claimant to act within the same time period from the date of occurrence, but with less time to decide to sue, is far less severe than barring the claim altogether.

> The Court of Appeals concluded that Boggs was "similarly situated" to the plaintiffs in *Martin* and *Van Dusen* because the Boggs, like those plaintiffs, could not have discovered the alleged acts of malpractice when they occurred. Boggs is similar to the plaintiffs in *Martin* and *Van Dusen* in that respect, but quite different in another. *Boggs or Carolyn had an 11–month window to file a medical malpractice claim after knowledge of the injury, yet did not. We hold that as long as the statute of limitations does not shorten this window of time so unreasonably that it is impractical for a plaintiff to file a claim at all, as it did in* Martin *and* Van Dusen, *it is constitutional as applied to that plaintiff.* The statute reflects a legislative judgment to define the class who may proceed as those who discover their claim in time to file within two years after the occurrence. That judgment is entitled to deference, and permits all within the class, including

Boggs, to bring their case to court, if they choose to do so, within the statutory period.

*Id.* 730 N.E.2d at 697 (emphasis added) (citation omitted).

Here, unlike in *Martin* and *Van Dusen,* we are not facing the practical impossibility of asserting the claim. Rather, like Boggs, Coffer could have brought a claim within the statutory period. The last opportunity for Arndt to diagnose and treat Coffer arose in September or October of 1995. Even assuming that Coffer did not learn that he had glaucoma and that he had had it for a long time until December 19, 1995, he had a twenty-two month window (until October of 1997) in which to file a medical malpractice claim, yet did not. *Boggs* indicates that the occurrence-based medical malpractice limitations period, which would bar Coffer's claim, is constitutional as applied to Coffer.

■ In the alternative, Coffer argues that the continuing wrong doctrine and/or the fraudulent concealment doctrine save his claim. The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place. *Havens v. Ritchey,* 582 N.E.2d 792, 795 (Ind.1991). In a case similar to Coffer's, also involving an optometrist's failure to diagnose glaucoma, we stated:

> The continuing wrong doctrine is applicable "where an entire course of conduct combines to produce an injury." When conduct is determined to constitute a continuing wrong, the statute of limitations is tolled "so that it does not commence running until the wrongful act ceases." When a patient's sole claim is a failure to diagnose and treat a disease, the omission cannot as a matter of law extend beyond the time the health care provider last rendered a diagnosis.

*LeBrun v. Conner,* 702 N.E.2d 754, 758 (Ind.Ct.App.1998) (citations omitted); *see also Boggs,* 730 N.E.2d at 699.

■ Coffer argues that his patient-optometrist relationship continued until the spring of 1996. However, the undisputed facts reveal that Coffer last saw Arndt in the fall of 1995. Coffer's vague assertions of telephone calls and contacts thereafter do not constitute an opportunity for Arndt to diagnose and treat Coffer. Thus, no genuine issue of fact exists regarding when the wrongful act ceased. Accordingly, the continuing wrong doctrine does not save Coffer's claim.

■ Under the doctrine of fraudulent concealment, a person is estopped from asserting the statute of limitations as a defense if that person, by deception or violation of a duty, has concealed material facts from the plaintiff and thereby prevented discovery of a wrong. *Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995). If the concealment is active, it is tolled until the patient discovers the malpractice, or in the exercise of due diligence should discover it. If the concealment is constructive, in this case by reason of an ongoing duty arising from the continuing physician-patient relationship, the statute of limitations is tolled until the termination of the physician-patient relationship, or, as in the active concealment case, until discovery, whichever is earlier. *See id.* Constructive concealment consists of the failure to disclose material information to the patient. *See id.* Active concealment involves affirmative acts of concealment intended to mislead or hinder the plaintiff from obtaining information concerning the malpractice. *See id.* at 521 (quoting *Keesling v. Baker & Daniels,* 571 N.E.2d 562, 565 (Ind.Ct.App.1991)). Under either strand of the doctrine, the patient must bring his or her claim within a reasonable period of time after the statute of limitations begins to run. *See id.* at 519.

■ Even assuming constructive fraudulent concealment, the statute of limitations would not have been tolled beyond

December 19, 1995,[4] the date Coffer learned that he had glaucoma and that he had had it for a long time. That is, on December 19, 1995, Coffer had knowledge of facts that led or should have led to the discovery of alleged malpractice. *Cf. Boggs,* 730 N.E.2d at 699 ("Even if discovery were to establish that the physician-patient relationship between Tri–State and Carolyn did not terminate until August 12, 1992, that Tri–State was an agent of Carolyn's treating physician, or that Tri–State's radiologist had information he should have disclosed to Carolyn, the statute of limitations would not be tolled beyond August 12, 1992, the date of Carolyn's biopsy and knowledge of facts that led to the discovery of alleged malpractice.").

Applying the doctrine of fraudulent concealment, Coffer had only a reasonable time beyond December 19, 1995 to file his claim. In December 1995, twenty-two months remained under the occurrence-based statute of limitations. Coffer did not file his proposed complaint until December 1997, twenty-four months later. Although we are sympathetic to Coffer's predicament, there is nothing in the circumstances of this case to indicate that twenty-four months was a reasonable time to delay filing suit. *See Boggs,* 730 N.E.2d at 699 (holding that twenty-two-and-a-half month delay was unreasonable as a matter of law); *Cacdac v. Hiland,* 561 N.E.2d 758, 758 (Ind.1990) (holding that twenty-two month delay was unreasonable as a matter of law); *Cyrus v. Nero,* 546 N.E.2d 328, 331 (Ind.Ct.App.1989) (holding that twenty-two month delay was unreasonable as a matter of law); *Spoljaric v. Pangan,* 466 N.E.2d 37, 43–44 (Ind.Ct.App.1984) (holding that fourteen month delay was unreasonable as a matter of law). Therefore,

the doctrine of fraudulent concealment does not save Coffer's claim.

## *II. Second Affidavit*

◼ Coffer also argues that the trial court erred by striking Cantor's second affidavit. Specifically, Coffer asserts that Arndt, without prior notice to Coffer, obtained an affidavit from Cantor, a glaucoma specialist, who was Coffer's treating doctor and expert witness. Arndt used Cantor's affidavit to support his motion for summary judgment. Coffer claims he obtained a second affidavit from Cantor to clarify Cantor's first affidavit and to support Coffer's motion in opposition to summary judgment. Arndt responds that the trial court properly struck Cantor's second affidavit because portions of it were redundant and because the portions that were not redundant were improper.[5]

◼ We review a trial court's decision to admit or exclude evidence for an abuse of discretion and will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances. *Richardson v. Calderon,* 713 N.E.2d 856, 860 (Ind.Ct.App.1999), *trans. denied.* Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Indianapolis Podiatry, P.C. v. Efroymson,* 720 N.E.2d 376, 383 (Ind.Ct.App.1999), *trans. denied.*

◼ Arndt correctly notes that a party opposing summary judgment may not create an issue of fact merely by submitting an affidavit that contradicts the affiant's prior sworn testimony. *See Justice v. Clark Memorial Hosp.,* 718 N.E.2d 1217, 1221 (Ind.Ct.App.1999), *trans. denied.* However, Cantor's second affidavit cannot

---

4. Again, we are unpersuaded by Coffer's vague assertions of telephone calls and contacts thereafter.

5. Arndt also asserts that Coffer waived any argument regarding Cantor's first affidavit by not challenging it earlier. However, *Long v. Methodist Hosp. of Ind., Inc.,* 699 N.E.2d

1164, 1166 (Ind.Ct.App.1998), *trans. denied,* provides that any objection to an affidavit raised *after* a ruling on summary judgment is waived as untimely. Because Coffer challenged Cantor's first affidavit *prior* to the ruling on summary judgment, no waiver occurred.

be fairly characterized as contradicting his first affidavit. In his second affidavit, Cantor stated:

4. On December 19, 1995, I examined [Coffer] and concluded that he had glaucoma and that he had had glaucoma, which had been undetected for several years.

5. [Coffer] was referred to me by [McCormick].

6. In my affidavit, which [Arndt's] counsel prepared and filed with the court, I stated in paragraph five that "by way of medical history and review of [Coffer's] ophthalmological records, I understand that [Coffer] was first diagnosed with glaucoma November 14, 1995 by [McCormick] according to his referral letter to me."

7. I need to clarify that paragraph of my affidavit.

8. My comment in paragraph five was taken strictly from a referral letter from [McCormick] to me.

9. I did not speak with [Coffer] prior to December 19, 1995.

10. I have no personal knowledge of what [McCormick] did or did not inform [Coffer] about glaucoma.

11. On December 19, 1995, I informed [Coffer] that he had glaucoma and that it was severe enough that, in my professional opinion, he had glaucoma for many years. Both the existence of glaucoma and its existence for years appeared to be news to [Coffer] on December 19, 1995.

That is, Cantor did not deny in his second affidavit that McCormick's referral letter indicated McCormick had first diagnosed Coffer's glaucoma on November 14, 1995. Instead, Cantor explained that the referral letter did not reveal, and that Cantor had no personal knowledge as to, whether McCormick had *conveyed* his diagnosis to Coffer on November 14, 1995. Indeed, in Cantor's opinion, Coffer appeared to have learned of his diagnosis for the first time on December 19, 1995. Under these circumstances, we conclude that the second affidavit, rather than contradicting the first affidavit, actually corrected a misconception created by the first affidavit.

In reaching this conclusion, we distinguish *Gaboury v. Ireland Road Grace Brethren, Inc.*, 446 N.E.2d 1310 (1983). Gaboury brought an action against a city and a church to recover for injuries sustained when his motorcycle struck a cable stretched across a church driveway. Although Gaboury's affidavit stated that he could not ascertain where the end of the road was located and that he was not aware he had entered the church property, his deposition indicated that he knew the church property was there and purposely headed for it to turn his motorcycle around. Our supreme court noted that Gaboury's affidavit contradicted sworn statements in his deposition, yet he "fail[ed] to offer any explanation for the discrepancies." *Id.* at 1314. In affirming summary judgment, our supreme court held that contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant. *Id.* To reiterate, Cantor's second affidavit clarified rather than contradicted his first affidavit. Thus, *Gaboury* does not apply.

■ To the extent Arndt argues foundational and relevancy problems, we are unpersuaded. Cantor did not offer expert opinion for statute of limitations purposes. He simply explained the facts as he knew, or did not know them regarding when Coffer learned of his diagnosis. Further, such information was clearly relevant to the underlying issue of when Coffer knew or should have known of the alleged malpractice.

■ Citing *Coghill v. Badger*, 430 N.E.2d 405, 407 (Ind.Ct.App.1982) (noting that portions of affidavits setting forth conclusory facts and conclusions of law cannot be used to support or oppose a

motion for summary judgment), *trans. denied,* Arndt also challenges the portion of the affidavit wherein Cantor states that the "existence of glaucoma and its existence for years appeared to be news" to Coffer on December 19, 1995. We believe Cantor should have simply described what Coffer's reaction was. However, the import of the statement is clear: Coffer reacted on December 19, 1995 in a manner that led Cantor to conclude that it was the first time he had learned of both his diagnosis and the length of time he had likely had glaucoma. Nevertheless, this inartfully drafted paragraph does not, by itself, constitute sufficient reason for the court to have stricken the affidavit. *See LeMaster v. Methodist Hosp. of Indiana, Inc.,* 601 N.E.2d 373, 376 n. 3 (Ind.Ct.App.1992) (noting that *Coghill* "supports a broad prohibition upon consideration of any conclusory statement, whether of law or fact, for summary judgment purposes. This prohibition, however, is overly broad. The better view ... applies the prohibition only to affidavits containing conclusions of law.").

In addition, Arndt cites *Kahf v. Charleston South Apartments,* 461 N.E.2d 723 (Ind.Ct.App.1984), *trans. denied,* for his argument that "the [deficient] affirmation also served as grounds on which the trial court struck" Cantor's second affidavit. Cantor signed his name beneath the following statement in the second affidavit: "I affirm under penalties for perjury that these representations are true to the best of my knowledge and belief." If this had been the reason for striking Cantor's second affidavit, we are quite certain the trial court also would have stricken Coffer's affidavit since it contains an identically worded statement. However, the trial court denied Arndt's motion to strike Coffer's affidavit. Hence, this argument is unavailing.

In summary, we conclude that the trial court abused its discretion by striking Cantor's second affidavit. However, in view of our resolution of the statute of limitations issue, we conclude that the er-

roneous striking of Cantor's second affidavit does not substantially affect the rights of the parties. The court properly granted summary judgment in favor of Arndt.

Affirmed.

DARDEN, J., and MATTINGLY, J. concur.