**Debra O. BURNS and Roger Burns, Appellants–Plaintiffs,**

**v.**

**Robert K. HATCHETT, D.M.D., Appellee–Defendant.**

No. 82A05–0212–CV–576.

Court of Appeals of Indiana.

April 24, 2003.

Glenn A. Deig, Evansville, IN, Rex E. Baker, Baker & Gilchrist, Avon, IN, Attorneys for Appellants.

Danny E. Glass, Fine & Hatfield, Evansville, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Debra and Roger Burns (collectively "the Burnses") appeal the trial court's grant of summary judgment in favor of Robert K. Hatchett, D.M.D. on their medical malpractice claim. The Burnses present four issues for our review, which we consolidate and restate as:

1. Whether the trial court erred when it found that the Burnses' claim was barred by the statute of limitations.

2. Whether the trial court erred when it rejected the Burnses' claim that the doctrine of fraudulent concealment precludes summary judgment in favor of Dr. Hatchett.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In 1997, Debra consulted Dr. Hatchett, an orthodontist, regarding treatment for her crooked upper teeth. In January 1998, Dr. Hatchett fitted Debra with braces, which she wore until Dr. Hatchett removed them in March 1998. Dr. Hatchett then fitted Debra with a retainer. When Debra told Dr. Hatchett that her lower teeth hurt and that her bite "seemed to be off[,]" Dr. Hatchett assured her that everything was fine. Debra's final appointment with Dr. Hatchett was on June 1, 1998.

Thereafter, Debra began experiencing headaches and vision problems. She consulted two physicians regarding those symptoms, but no diagnosis was made. Then, between July 1, 1999 and November 1999, Debra consulted Dr. Fink, a family dentist, regarding her continued problems with her bite. Dr. Fink finally diagnosed her with temporomandibular joint disorder ("TMJ"), and he stated that Dr. Hatchett's negligent care was to blame.

In December 1999, the Burnses contacted attorney Rex Baker regarding a possible claim against Dr. Hatchett. After tak-

ing the case, Baker contacted the Indiana Department of Insurance ("IDOI") to find out whether Dr. Hatchett was a qualified health care provider for purposes of Indiana's Medical Malpractice Act.[1] Baker was told that the IDOI had no record of malpractice insurance coverage for Dr. Hatchett for the years 1997 or 1998.

On December 15, 1999, Baker wrote a letter to Dr. Hatchett informing him that the Burnses had a possible negligence claim against him and asking him to have his malpractice insurance carrier contact Baker. Elizabeth Franklin of AAO Services, Dr. Hatchett's malpractice insurance carrier, telephoned Baker, and the two discussed whether Dr. Hatchett was a qualified health care provider in 1998. Franklin stated that she did not know, but that she would get back to Baker with an answer. When Franklin called Baker again, she assured him that "they had complied with all of the requirements of the Indiana Medical Malpractice Act, and that Dr. Hatchett should be shown as a qualified health care provider."

On April 19, 2000, Baker sent Franklin a formal settlement demand letter and included Debra's relevant medical records for her review. On April 26, 2000, Franklin wrote Baker a letter advising him that she would contact him in mid-May 2000 to discuss Debra's claim. But Baker never heard from Franklin or anyone else at AAO Services.

On May 31, 2000, Baker filed a proposed complaint for damages with the IDOI on the Burnses' behalf. On June 8, 2000, Baker received a letter from the IDOI advising him that their records did not show that Dr. Hatchett was a qualified

health care provider in 1998. On August 24, 2000, Baker filed a complaint for damages with the Vanderburgh Superior Court on the Burnses' behalf.

On September 10, 2002, Dr. Hatchett filed a motion for summary judgment alleging that the Burnses' complaint was barred by the applicable statute of limitations. The trial court granted that motion. This appeal ensued.

## DISCUSSION AND DECISION

In determining the propriety of summary judgment, we apply the same standard as the trial court. *Jesse v. American Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.* 727 N.E.2d 790, 792 (Ind.Ct.App.2000). Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts. *Laux v. Chopin Land Associates, Inc.*, 615 N.E.2d 902, 905 (Ind.Ct. App.1993), *trans. denied.*

### Issue One: Statute of Limitations

The Burnses first contend that the trial court erred when it found that their claim was barred by the applicable statute of

---

1. Indiana's Medical Malpractice Act ("the Act") provides in relevant part that a physician who is not a qualified health care provider is not covered under the Act. Ind.Code § 34–18–3–1. The Act also provides in relevant part that a physician is not a qualified health care provider for purposes of the act unless he files with the IDOI proof of financial responsibility and pays a surcharge. Ind. Code § 34–18–3–2.

limitations. Specifically, they maintain that our supreme court's holding in *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), left unanswered the question of whether *all* medical malpractice plaintiffs have a full two years from the date they discover the malpractice to file a claim. Thus, the Burnses assert, the law was unsettled regarding what the applicable statute of limitations was on their claim and equity mandates that their claim be deemed timely filed. We cannot agree.

Indiana Code Section 34–18–7–1 sets out the limitations period under the Medical Malpractice Act and provides in relevant part: "A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect. . . ." This statute is an occurrence-based rather than a discovery-based statute of limitations. *Coffer v. Arndt*, 732 N.E.2d 815, 819 (Ind.Ct.App.2000), *trans. denied.*

In *Martin v. Richey*, 711 N.E.2d at 1284, our supreme court held that:

> the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of the malpractice [within two years], because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim.

But, unlike the present case, the facts of *Martin* and a companion case, *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind.1999), in-

volved plaintiffs who did not discover the malpractice until *after* the two-year occurrence-based statute of limitations had expired.

In *Boggs v. Tri–State Radiology, Inc.,* 716 N.E.2d 45 (Ind.Ct.App.1999), *rev'd by* 730 N.E.2d 692 (Ind.2000), this court held that the statute of limitations was also unconstitutional as applied to a plaintiff who discovered an act of malpractice eleven months *before* the expiration of the occurrence-based limitations period. But our supreme court reversed that opinion and held that "as long as the statute of limitations does not shorten th[e] window of time so unreasonably that it is impractical for a plaintiff to file a claim at all, as it did in *Martin* and *Van Dusen,* it is constitutional as applied to that plaintiff." *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 697 (Ind.2000). The court concluded that eleven months was a reasonable period of time to bring a claim. *Id.*

Here, the Burnses maintain that they did not discover Dr. Hatchett's alleged malpractice until approximately nine to eleven months before the two-year occurrence-based statute of limitations was to expire on their claim.[2] And they contend that, at the time they filed their proposed complaint for damages with the IDOI, the law was unsettled regarding whether the Burnses had two full years from the date of discovery to file suit in light of our supreme court's opinion in *Martin* and this court's vacated opinion in *Boggs.* In essence, the Burnses claim that the trial court unfairly applied our supreme court's holding in *Boggs* retroactively.

In support of their argument, the Burnses rely on our supreme court's opinion in

---

**2.** In her affidavit, Debra states that "sometime between July 1, 1999 and September 1, 1999," Dr. Fink told her she had TMJ and that she had a "clear case of malpractice" against Dr. Hatchett.

*McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175 (Ind.1993). In that case, the plaintiff called an expert witness in rebuttal at trial, but the defendant objected on the grounds that the plaintiff had not previously disclosed the identity of the witness. The trial court refused to allow the witness to testify, and, after the jury found in favor of the defendant, the plaintiff appealed. Our supreme court noted that there were two conflicting lines of cases addressing the issue and held that parties must generally disclose the identity of rebuttal witnesses in advance of trial. But our supreme court also held that "it would be unfair to hold McCullough responsible for failing to predict how this Court would resolve the ambiguity in Indiana's case law" and refused to apply the newly-clarified rule of law in her case. *Id.* at 181.

The Burnses' reliance on *McCullough* is misplaced. Unlike the issue in *McCullough,* the issue presented in *Boggs* had *never* been addressed by an Indiana court. In other words, at the time the Burnses filed their proposed complaint, there were not two conflicting lines of cases on the issue. Thus, the Burnses had no Indiana precedent upon which to support their supposition that they had a full two years from the date they discovered Dr. Hatchett's alleged malpractice. Instead, it appears that they relied on *Martin,* which involved a plaintiff who did not discover the malpractice until after the two-year occurrence-based statute of limitations had run, and this court's opinion in *Boggs,* which was vacated in February 2000. The facts in *Martin* are simply not close enough to those presented here to warrant such reliance. And it is well-settled that vacated opinions have no effect as legal precedent. *See* Ind. Appellate Rule 58(A). We conclude that neither *Martin* nor *Boggs* is dispositive of the issue presented here, and the Burnses could not have reasonably relied on either of those opinions

in determining the applicable statute of limitations.

Instead, we conclude that our opinion in *Shenefield v. Barrette,* 716 N.E.2d 1 (Ind. Ct.App.1999), is controlling authority and that the statute of limitations ran on the Burnses' claim on June 9, 2000, at the latest. In *Shenefield,* the plaintiff treated with the defendant physician between June 17, 1996 and June 21, 1996. On June 16, 1998, plaintiff's counsel filed a proposed complaint for damages on plaintiff's behalf with the IDOI. In a letter dated June 23, 1998, the IDOI notified plaintiff's counsel that the defendant physician had failed to file "proof of financial responsibility and payment of the required surcharge at the time of the alleged malpractice," so he was not a qualified health care provider under the Medical Malpractice Act. *Id.* at 2. Plaintiff's counsel received that letter on June 25, 1998, but he did not review the letter until June 29, 1998. In response to the letter, plaintiff's counsel telephoned the defendant physician's malpractice insurance carrier and was told that the defendant "was, and always had been, covered by medical malpractice insurance." *Id.* at 3. Plaintiff's counsel requested documentation of the insurance coverage, but when it had not arrived by July 13, 1998, plaintiff's counsel filed a complaint with the Wabash Circuit Court.

After the trial court granted summary judgment in favor of the defendant physician on the basis that plaintiff's claim was time-barred, plaintiff appealed. *Id.* We agreed with the trial court, and our analysis was as follows:

> The trial court noted that had the Shenefields not filed their complaint with the [IDOI], the two-year limitations period on their claim would have expired on June 22, 1998. However, *the filing of a complaint with the [IDOI] tolls the*

*statute of limitations until the [IDOI] informs the parties that a provider is not qualified under the Act.* Upon such notice, the statute begins to run again, and the claimant must file an action in court or risk being time-barred. As a result, the Shenefields had some five days from the date the [IDOI's] letter was received, or until about June 30, 1998, to file an action in the appropriate court. They did not file their complaint in the Wabash Circuit Court until July 13, 1998, and the trial court found the complaint was time-barred.

*Id.* at 3–4 (citations omitted, emphasis added).

We conclude that the facts presented in this case are analogous to those in *Shenefield.* Indeed, the only significant difference is that here, the IDOI informed the Burnses' counsel that Dr. Hatchett was not a qualified health care provider several months before the occurrence-based statute of limitations was to expire.[3] So the Burnses were in a much better position than the plaintiffs in *Shenefield,* who had only five days' notice that the defendant physician was not a qualified health care provider. Yet the Burnses do not explain why they did not act upon the information their counsel obtained from the IDOI[4] and relied instead on the information they received from Dr. Hatchett's malpractice insurance carrier. As we noted in *Shenefield:*

Whether a health care provider is "qualified" under the Act is not determined solely by whether the provider has insurance—rather, it depends upon whether the proof of insurance or other proof of financial responsibility has been filed and the surcharge paid. Thus, the delay in bringing the suit resulted not from the representation by the doctor's employee or from the doctor's failure to obtain insurance, but from the Shenefields' failure to distinguish between being insured and being "qualified" under the Act.

*Id.* at 4–5.

▓ Here, Dr. Hatchett's insurance carrier representative advised the Burnses' counsel that "they had complied with all of the requirements of the Indiana Medical Malpractice Act, and that Dr. Hatchett *should be shown* as a qualified health care provider." (Emphasis added). This information, combined with the information the Burnses' counsel obtained from the IDOI to the contrary, put the Burnses on notice that, *at the very least,* Dr. Hatchett's status as a qualified health care provider was unresolved. Yet the Burnses' counsel made no further inquiry with the IDOI to verify the information provided by Dr. Hatchett's insurance company. Even after their counsel had received notification from the IDOI in writing that Dr. Hatchett was not a qualified health care provider, the Burnses inexplicably waited until August 24, 2000 to file a complaint with the court.[5]

3. Baker's affidavit references the time period from December 1999 through January 2000, but provides no specific date, regarding his contact with the IDOI.

4. In *Shenefield,* we noted that the Act is silent regarding "the procedure the [IDOI] is to follow in responding" to an inquiry regarding a physician's status. *Shenefield,* 716 N.E.2d at 5. Indeed, an argument could be made that the IDOI's verbal response to the Burns' counsel in December 1999 or January 2000

was sufficient under the Act to "inform" the Burns that Dr. Hatchett was not a qualified health care provider. But neither party to this appeal has raised that issue, so we do not address it here.

5. Indeed, in June 2000, the Burns could not have made a good faith argument that the occurrence-based statute of limitations was unconstitutional as applied to them because they were fully prepared to file a complaint, as evidenced by the thorough settlement de-

Following our analysis in *Shenefield,* we hold that the applicable statute of limitations was tolled from May 31, 2000, when the Burnses filed a proposed complaint with the IDOI, until June 8, 2000, when the Burnses' counsel received the IDOI's letter clarifying Dr. Hatchett's status. Because the statute was originally set to expire on June 1, 2000, the Burnses had until June 9, 2000, at the latest, to file their complaint for damages with the court. As such, their complaint, which was filed in August 2000, was time-barred.

### Issue Two: Fraudulent Concealment

 The Burnses next contend that the doctrine of fraudulent concealment precludes summary judgment in favor of Dr. Hatchett.[6] The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. *Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995) (citation omitted). Thus, equitable estoppel can

arise either from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. *Id.* The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud. *Id.*

The Burnses do not clarify whether they are alleging active or passive fraudulent concealment, so we address both. If the alleged fraudulent concealment was passive, then the statute of limitations began to run at the termination of the physician-patient relationship. *See id.* The Burnses make no contention that Debra's relationship with Dr. Hatchett extended beyond June 1, 1998. As such, even assuming passive fraudulent concealment, the Burnses' statute of limitations would have expired on June 1, 2000.

Assuming that the Burnses allege active fraudulent concealment, we conclude that they have not designated evidence to establish a question of fact on that issue. In

mand letter and accompanying medical records prepared on April 19, 2000, and the proposed complaint they filed with the IDOI on May 31, 2000. In other words, there is no reasonable explanation for the Burns' failure to timely file their complaint other than the confusion regarding Dr. Hatchett's status with the IDOI. The plaintiffs in *Boggs,* for instance, alleged that they were too busy obtaining medical treatment to even think about litigation. As such, the plaintiffs argued that allowing them less than a full two-years was "a practical bar" to initiating a cause of action. *Boggs,* 716 N.E.2d at 48. The Burns cannot make such an argument here.

6. The Burns also contend that the doctrines of equitable estoppel and fraud preclude summary judgment in favor of Dr. Hatchett. Specifically, they contend that because Dr. Hatchett's insurance carrier misrepresented that he was a qualified health care provider under the Act, Dr. Hatchett cannot raise the statute of limitations defense. But they do

not cite to any designated evidence showing that the Burns *reasonably* relied on that misrepresentation or that they were induced to act upon it to their detriment, which are essential elements of those doctrines. *See Munsell v. Hambright,* 776 N.E.2d 1272, 1281 (Ind.Ct.App.2002) (noting element of actual fraud is plaintiff's reasonable reliance on misrepresentation), *trans. denied; see also Paramo v. Edwards,* 563 N.E.2d 595, 598 (Ind. 1990) (noting element of equitable estoppel is representation made to one without knowledge or reasonable means of knowing true facts). Indeed, Baker is an experienced attorney who researched whether Dr. Hatchett was a qualified health care provider with the IDOI soon after the Burns retained him. There is no designated evidence showing that the insurance carrier either discouraged Baker from clarifying Dr. Hatchett's status with the IDOI or from filing a complaint with the court. The Burns' claims on these issues are without merit.

*Hughes,* the plaintiff was diagnosed with Hodgkins Disease in 1992 and sued the defendant physician for failing to disclose the results of a 1989 chest x-ray which revealed an abnormal mass. Plaintiff alleged active fraudulent concealment and presented the following evidence in support thereof: 1) that the defendant "failed to communicate to her the findings of the ... chest X-ray," and 2) that the defendant "affirmatively assured her that everything was 'okay.'" *Id.* at 522. The trial court denied the defendant's motion for summary judgment. On appeal, our supreme court noted that the plaintiff did not designate any evidence "from which a finder of fact might reasonably infer that Dr. Hughes had actual knowledge of the X-ray findings, that he intentionally concealed the results from her, or that his statement that she was 'okay' was calculated to prevent inquiry or to mislead her." *Id.* Our supreme court held that "the doctrine of active fraudulent concealment does not arise from the facts presented by the plaintiff[,]" and remanded the action to the trial court with instructions to grant the defendant's summary judgment motion. *Id.*

Here, the Burnses designated evidence that despite Debra's complaints that her bite "seemed to be off," Dr. Hatchett told her that her bite was correct, "that everything looked great, and ... that [she] should have no further problems." As in *Hughes,* the Burnses have not designated any evidence from which a finder of fact might reasonably infer that Dr. Hatchett had actual knowledge that Debra had developed TMJ as a result of his treatment, that he intentionally concealed this condition from her, or that his statements that "everything looked great" and she "should have no further problems" were calculated to prevent inquiry or to mislead her. We conclude that the Burnses have not estab-

lished the existence of a genuine issue of material fact on the issue of Dr. Hatchett's alleged active fraudulent concealment. Thus, Dr. Hatchett is entitled to judgment as a matter of law.

Affirmed.

DARDEN and VAIDIK, JJ., concur.