## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2018, 5:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Zachary S. Kester
Robert D. Miller
Charitable Allies, Inc.
Indianapolis, Indiana

Michael J. Cork
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
JONATHAN ANDERSON AND
ANDERSON PARTNERS, LLC

Kevin E. Steele
Burke Costanza & Carberry LLP
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES
UP COMMONS LLC, UP
DEVELOPMENT LLC, UPA
LLC, AND CULLEN J. DAVIS

Heather A. McCarthy
Anthony DeBonis, Jr.
Anthony DeBonis, Jr. &
Associates Attorneys at Law, LLC
Hobart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

South Shore GP, LLC, and
Edgewater Systems for Balanced
Living, Inc.,

*Appellants-Plaintiffs,*

v.

Jonathan Anderson, Anderson
Partners LLC, UP Commons
LLC, UP Development LLC,
UPA LLC, and Cullen J. Davis,

*Appellees-Defendants*

May 15, 2018

Court of Appeals Case No.
45A04-1710-PL-2287

Interlocutory Appeal from the
Lake Superior Court

The Honorable Bruce D. Parent,
Judge

Trial Court Cause No.
45D04-1709-PL-93

**Crone, Judge.**

# Case Summary

[1]  South Shore GP, LLC ("South Shore"), and Edgewater Systems for Balanced

Living, Inc. ("Edgewater") (collectively "Appellants"), filed a complaint against

Jonathan Anderson and Anderson Partners LLC[1] alleging legal malpractice and

against UP Commons LLC, UP Development LLC, UPA LLC, and Cullen J.

Davis (collectively "Appellees") alleging illusory contract, breach of contract,

intentional interference with a contractual and/or business relationship, fraud,

and adhesion.  Appellants sought a preliminary injunction to prohibit Appellees

from terminating Edgewater as a service provider, which the trial court denied.

---

[1]  Jonathan Anderson and Anderson Partners LLC are not participating in this appeal beyond their filing of a motion to strike certain portions of Appellants' brief.  By separate order, we deny their motion to strike.

Appellants now bring this interlocutory appeal, arguing that the trial court erred in finding that their remedies at law are adequate. Finding no error, we affirm.[2]

## Facts and Procedural History[3]

Edgewater is an Indiana nonprofit corporation providing mental health services and primary health care services to people with disabilities such as mental illness and addiction. Tr. Vol. 2 at 31. Edgewater's president and CEO is Dr. Danita Johnson-Hughes. Beginning in 2009, Edgewater began efforts to build a permanent supportive housing project for chronically homeless people from which Edgewater would operate to provide those residents with social and health-related services. *Id.* at 30-31. The housing project would be known as South Shore Commons ("the SSC Project"). Edgewater employed Anderson Partners to represent its interests in the development of the SSC Project. *Id.* at 10, 26. Edgewater persuaded the City of Gary to donate fifty-two plots of land for the project's development. *Id.* at 30. However, Edgewater did not have the financial capability to develop the SSC Project on its own. *Id.* at 22, 69. Thus, to facilitate the development and operation of the project, Edgewater sought to create a partnership. South Shore was established, with Edgewater as its sole managing member, to be a partner of such a partnership. Davis, the sole

[2] Appellees filed a motion to strike certain portions of Appellants' brief, which we deny by separate order. However, Appellants concede that one factual statement is unsupported by the record, and we ignore that statement. We further ignore the inappropriate argument Appellants used in their statement of the case and statement of the facts, and we admonish Appellants to refrain from doing so in future appeals.

[3] Our understanding and presentation of the facts have been hampered by *both* parties' frequent citation errors and numerous statements of facts which lack citations or are not supported by the record.

managing member of UP Commons, UP Development, and UPA, agreed to partner in developing the SSC Project, as did National Equity Fund Assignment Corporation ("NEF").

[3] On February 22, 2013, UP Commons, South Shore, and NEF became partners of South Shore Commons I LP ("the Partnership") upon execution of the "Amended and Restated Agreement of Limited Partnership of South Shore Commons I LP" ("the Partnership Agreement"), the focal point of the current controversy. Appellants' App. Vol. 2 at 25-186 (Ex. C). Pursuant to the Partnership Agreement, the business of the Partnership is to develop and operate the SSC Project, a sixty-unit permanent supportive housing rental project in Gary to be rented to low-income residents. *Id*. at 42, 47. UP Commons is the managing general partner, South Shore is the co-general partner, and NEF is the limited partner. *Id*. at 47-48. Davis and UP Development are guarantors of the general partners' guaranty obligations as provided by the Partnership Agreement. *Id*. at 35. UPA is the property management agent. *Id*. at 42.

[4] The SSC Project is supported by the Shelter Plus Care Program, a federal program administered by the Indiana Housing and Community Development Authority ("IHCDA"). The Shelter Plus Care Program is defined in the Partnership Agreement as "a program designed to provide housing and supportive services on a long-term basis for homeless persons with disabilities and their families who are living in places not intended for human habitation (e.g., streets) or in emergency shelters." *Id*. at 44. The Shelter Plus Care

Program provides a S + C Subsidy (rental assistance) to the tenants of the SSC Project. This S + C Subsidy is defined in the Partnership Agreement as "the project-based rental assistance for homeless persons provided under the Shelter Plus Care Program for thirty[-]seven (37) Residential Units in an aggregate amount of not less than [$1,485,180.00], and for a period of not less than sixty (60) months." *Id*. at 44.

[5] Prior to this lawsuit, the Shelter Plus Care Program provided support to the SSC Project through Edgewater; the IHCDA awarded a grant to Edgewater as the subrecipient of the S + C Subsidy, and Edgewater passed those funds to the Partnership. Tr. Vol. 2 at 33. As the subrecipient of the S + C Subsidy, Edgewater was authorized by IHCDA to provide social services to the SSC Project residents, for which Edgewater would be reimbursed by Medicaid or a private insurer. *Id*. at 33-34. Relevant to Edgewater's role, Section 6.3.59 of the Partnership Agreement provides, "[South Shore] shall cause [Edgewater] to provide the S + C Subsidy to the Partnership in accordance with the Shelter Plus Care Agreement." Appellants' App. Vol. 2 at 85.[4] The "Shelter Plus Care Agreement" is defined as "that certain Agreement Regarding Shelter Plus Care Award, dated as of the date first written above, and entered into by and between the Partnership and [Edgewater], which sets forth, among other things, [Edgewater's] use of the S + C Subsidy for the benefit of the Partnership." *Id*. at 44. In addition, Section 6.3.62 provides,

---

[4] The "Shelter Plus Care Agreement" is not in the record before us.

> [South Shore] acknowledges and agrees, for itself and on behalf of [Edgewater], that the Partnership had granted [Edgewater] the use of reasonable office space in the non-residential areas in the [SSC] Project for the purpose of administering the S + C Subsidy and to provide certain supportive services to the tenants of the Partnership; provided, however, [Edgewater] shall agree to promptly vacate such space if [UP Commons] determines that a new service provider will take over the responsibilities of [Edgewater] with respect to the provision of such services.

*Id*. at 85 (underlined emphasis omitted).

[6] To serve as a subrecipient in the Shelter Plus Care Program, Edgewater entered into an agreement with the IHCDA. Evidently, Edgewater's participation in the Shelter Plus Care Program required periodic renewal. In 2017, Edgewater and the IHCDA executed a new agreement titled "Continuum of Care Permanent Supportive Housing Rental Assistance HUD Agreement" No. SC-017-0109 ("the IHCDA Agreement").[5] *Id*. at 189-213 (Ex. D). Pursuant to the IHCDA Agreement, IHCDA awarded to Edgewater, as subrecipient, a grant of $329,970, and Edgewater agreed to abide by the applicable rules and regulations in providing the rental subsidies to the SSC Project and in providing services to the residents. *Id*.; Tr. Vol. 2 at 32.

[7] A few other provisions of the Partnership Agreement are also relevant. Section 10.6 grants NEF the right to remove a general partner from the Partnership

---

[5] The IHCDA Agreement was signed by Johnson-Hughes on May 24, 2017, and by the IHCDA's executive director on June 8, 2017. Appellants' App. Vol. 2 at 200. The prior version of their agreement is not in the record.

based on an event of default as described therein. Appellants' App. Vol. 2 at 123. The Partnership Agreement grants Edgewater the right of first refusal for the purchase of the SSC Project for $1000 at the end of fifteen years. *Id.* at 181. However, Edgewater's option to purchase is contingent upon South Shore remaining in good standing in the Partnership without the occurrence of any event described in Section 10.6 of the Partnership Agreement. *Id.*

[8] On August 4, 2017, Cullen authored a letter to Johnson-Hughes notifying her that UP Commons, as the managing general partner of the Partnership, would no longer "retain [Edgewater] to provide social services to those tenants residing at the [SSC] Project." Appellants' App. Vol. 3 at 12. Citing the "Agreement Regarding Shelter Plus Care Award between Edgewater and the Partnership dated February 22, 2013,"[6] and Section 6.3.62 of the Partnership Agreement, UP Commons requested that Edgewater vacate its SSC Project office space by the close of business on August 30, 2017. *Id.* Cullen also advised Edgewater that IHCDA had been notified of the change of service provider and that IHCDA would not be renewing the IHCDA Agreement with Edgewater. *Id.* Cullen explained that the reason for the notice was that Edgewater was failing to meet its obligations under the aforementioned agreements and that recent financial audits revealed that Edgewater's financial solvency was inadequate. *Id.* In addition, Cullen informed Edgewater that "[w]hile NEF supports the decision to cease retaining Edgewater's services, it

---

[6] Pursuant to the Partnership Agreement, the "Agreement Regarding Shelter Plus Care Award" is the Shelter Plus Care Agreement, which is not in the record before us.

does not intend to effectuate removal of [South Shore] from the Partnership, despite its authority to do so under the [Partnership Agreement]." *Id.* at 13.

[9] On August 8, 2017, IHCDA informed Edgewater that it was terminating the IHCDA Agreement, citing the provision permitting termination at any time by either party with or without cause upon thirty days' written notice. *Id.* at 14.

[10] On September 1, 2017, Appellants filed their complaint for damages and injunctive relief. Appellants' App. Vol. 2 at 5. Appellants asserted claims against Appellees of illusory contract, breach of contract, intentional interference with a contractual and/or business relationship, fraud, and adhesion. Also on September 1, Appellants filed their first emergency motion for temporary restraining order and preliminary injunction, requesting that the trial court issue an order restraining UP Commons from terminating or interfering with Edgewater's provision of social services to SSC Project residents, attempting to enforce Section 6.3.62 to require Edgewater to vacate its SSC Project office space, and interfering with payment of funds due under the IHCDA Agreement. Appellants also requested that the trial court order UP Commons to take necessary action to rescind the August 8, 2017 termination notice from IHCDA to Edgewater. Appellants' App. Vol. 3 at 25.

[11] On September 6, 2017, Appellants filed a second emergency motion for a temporary restraining order and preliminary injunction alleging that UP Commons had locked them out of the SSC Project property and requesting that the trial court issue an order "prohibiting [UP Commons] from excluding

Edgewater from the premises, requiring them to change the locks back or provide keys to Edgewater personnel, and from engaging in any further self-help remedies." *Id*. at 39.

[12] The trial court held a hearing on September 11, 2017. Johnson-Hughes testified if Edgewater is removed as a social service provider for the SSC Project, it will lose the grant from IHCDA, which is about $329,000, and will "lose the ability to provide social services and receive that revenue for those social services." Tr. Vol. 2 at 32, 34. When asked whether the cancellation of the contract with IHCDA would materially affect Edgewater's relationship with IHCDA, Johnson-Hughes testified, "I suppose anything is likely." *Id*. at 43-44. She also testified that pursuant to the Partnership Agreement, South Shore is owed $65,000 as a developer's fee. *Id*. at 34. She testified that if Edgewater was no longer the service provider for the SSC Project, South Shore could be removed from the Partnership, in which case Edgewater would be unable to exercise its option to purchase the SSC Project for $1000. *Id*. at 44-46. Appellees did not present evidence.

[13] The following day, the trial court issued an order concluding that "[t]he majority of the allegations made by [Appellants] were financial in nature and thus an adequate remedy existed at law," and denying Appellants' motion for a temporary restraining order and a preliminary injunction. Appealed Order at 2. Appellants now appeal.

# Discussion and Decision

Appellants challenge the denial of their motion for a preliminary injunction.

> [W]hen reviewing findings of fact and conclusions of law entered upon the denial of a motion for preliminary injunction pursuant to Trial Rule 52(A)(1), we must determine if the trial court's findings support its judgment and will reverse the judgment only when clearly erroneous. Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences therefrom to support them. The trial court's judgment is clearly erroneous only if it is unsupported by the findings and the conclusions that rely upon those findings.

*M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1074 (Ind. Ct. App. 2005)

(citations omitted).

> When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. Ind. Trial Rule 52(A). When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them.

*Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind. Ct. App. 2001), *trans. denied*

(citation omitted). Here, Appellants are appealing from a negative

judgment, and therefore are entitled to reversal only if they "establish

that the trial court's judgment is contrary to law." Pinnacle Healthcare,

LLC v. Sheets, 17 N.E.3d 947, 953 (Ind. Ct. App. 2014). A judgment is

contrary to law only if "the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court." Curley v. Lake Cty. Bd. of Elections & Registration, 896 N.E.2d 24, 32-33 (Ind. Ct. App. 2008), trans. denied (2009). "We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment." Hydraulic Exch. & Repair, Inc. v. KM Specialty Pumps, Inc., 690 N.E.2d 782, 785 (Ind. Ct. App. 1998).

[15] Preliminary injunctions are designed to protect the property and rights of parties from any injury until the issues and equities in a case can be determined after a full examination and hearing. *Barlow*, 744 N.E.2d at 6-7 (citing 42 AM. JUR. 2D, *Injunctions* § 13 (1969)). "The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.*, 826 N.E.2d 49, 63 (Ind. Ct. App. 2005).

> In order to obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to the movant outweighs the potential harm to the nonmovant resulting from the granting of the injunction; and (4) the public interest would not be disserved.

*Mayer v. BMR Props., Inc.*, 830 N.E.2d 971, 978 (Ind. Ct. App. 2005) (citations omitted).

[16] Here, the dispositive question is whether Appellants' remedies at law are adequate. "If an adequate remedy at law exists, injunctive relief should not be granted. A party suffering mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole." *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind. 2002). However, "the trial court has a duty to determine whether the legal remedy is as full and adequate as the equitable remedy." *Barlow*, 744 N.E.2d at 6. "A legal remedy is adequate only where it is as plain, complete and adequate–or in other words, as practical and efficient to the ends of justice and its prompt administration–as the remedy in equity." *Id*. at 7.

[17] Appellants concede that they have "suffered economic harm in the form of breach of contract, fraud, and tortious interference with contract and business relationship," but they assert that their remedies at law are inadequate because the fees that they would have collected under the IHCDA Agreement are not subject to a precise determination. Appellants' Br. at 15. They further assert that that they will also suffer from "non-financial harm, including the inability generally to perform under the IHCDA Agreement, a loss of goodwill, and potential damage to prospective future business relationships." *Id*. at 18. In support of their argument that their remedies at law are inadequate, Appellants rely principally on *City of East Chicago v. Lake County Transfer, Inc.*, 854 N.E.2d 23 (Ind. Ct. App. 2006), *trans. granted*. However, when the supreme court

granted transfer in that case, the Court of Appeals opinion was vacated pursuant to Indiana Appellate Rule 58(A), and therefore it has no precedential value.[7] *See Burns v. Hatchett*, 786 N.E.2d 1178, 1182 (Ind. Ct. App. 2003) ("[I]t is well-settled that vacated opinions have no effect as legal precedent."), *trans denied*. Nevertheless, we will address what remains of their argument.

[18] Turning first to the loss of Edgewater's fees under the IHCDA Agreement and Edgewater's inability to generally perform under that agreement, Appellants assert that "the loss of fees resulting from the termination of Edgewater as the social services provider for [the SSC Project] is speculative" because the "fees are based on the actions and needs of a large group of other individuals with varying needs and varying times." Appellants' Br. at 23. We are unpersuaded that the variation in the number and type of services Edgewater provides under the IHCDA Agreement renders the loss of fees unquantifiable. Losses of this kind are precisely the kind of calculable financial harm that is typical in breach of contract actions. In fact, in their complaint, Appellants estimated their damages from the cancellation of the IHCDA Agreement to be approximately $500,000 a year. Appellants' App. Vol. 2 at 17. We conclude that Appellants' legal remedies for their loss of fees are adequate.

[19] As for the loss of goodwill and the potential damage to prospective future business relationships, we note that Appellants failed to present evidence that

---

[7] After the supreme court granted transfer, the parties filed a joint motion to dismiss the appeal. The supreme court granted their motion and dismissed the appeal. In so doing, the supreme court did not reinstate the Court of Appeals opinion. We note that the order does not appear to be available on Westlaw.

such injuries will result from the termination of the IHCDA Agreement. When asked whether the cancellation of the contract with IHCDA would materially affect Edgewater's relationship with IHCDA, Johnson-Hughes testified, "I suppose anything is likely." Tr. Vol. 2 at 43-44. Her response was nothing more than speculation. Appellants' other two citations to the transcript involve testimony supporting the *financial* consequences to Edgewater. *See id*. at 32, 35. In fact, the evidence suggests that Edgewater will be able to maintain its relationship with IHCDA to provide services to other clients. When asked whether she had personal knowledge of any objections that IHCDA would have to Edgewater continuing social service programming at the SSC Project, Johnson-Hughes testified, "I have no knowledge that IHCDA does not want us to continue to provide services. In fact, we have other contracts with IHCDA and one of them I just signed the renewal on last week." *Id*. at 41-42. Johnson-Hughes also testified that in the past when IHCDA reviewed Edgewater's compliance with the applicable rules and regulations and found instances of noncompliance, IHCDA had always approved Edgewater's plans to correct its operations to become compliant. *Id*. at 42.

[20]     Moreover, other panels of this Court have found that injuries to reputation are quantifiable and therefore adequate remedies at law exist for such claims. In *Daugherty v. Allen*, 729 N.E.2d 228, 236 (Ind. Ct. App. 2000), *trans. dismissed*, we reversed the trial court's grant of a preliminary injunction because the movant had an "adequate remedy at law for the injury to his business and personal

reputation, that is a suit for money damages." In reaching this conclusion, we explained,

> We have repeatedly allowed plaintiffs to recover damages for injury to their reputation in defamation suits, damages which are not easily quantifiable. *See Coachmen Indus., Inc. v. Dunn*, 719 N.E.2d 1271, 1276 (Ind. Ct. App. 1999); *Powers v. Gastineau*, 568 N.E.2d 1020, 1025 (Ind. Ct. App. 1991), *trans. denied*; *see also Erdman v. White*, 411 N.E.2d 653, 659 (Ind. Ct. App. 1980). Moreover, we have held that "a professional practice's goodwill value may be included in the marital estate for purposes of property distribution pursuant to a dissolution decree," and thus, the "goodwill" of the business is quantifiable. *See Porter v. Porter*, 526 N.E.2d 219, 225 (Ind. Ct. App. 1988); *see also Cleary v. Cleary*, 582 N.E.2d 851, 853 (Ind. Ct. App. 1991).

*Id.* at 235-36; *see also Ind. Family & Soc. Servs. Admin. v. Ace Foster Care & Pediatric Home Nursing Agency Corp.*, 823 N.E.2d 1199, 1204 (Ind. Ct. App. 2005) (observing that adequate legal remedy existed for injuries to reputation and credibility). Thus, adequate legal remedies exist for any loss of goodwill and potential damage to future business relationships that Appellants may establish in a full hearing on the merits.

Appellants have failed to show that the trial court's judgment is contrary to law. Accordingly, we affirm the trial court's denial of their motion for a preliminary injunction.

Affirmed.

Riley, J., and May, J., concur.